## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NOS.:** |
| **AMERICAN AMBULETTE & AMBULANCE SERVICE, INC.,**<br>**D/B/A MEDCORP, D/B/A LIFE AMBULANCE** | **13-07673-8-SWH** |
| **COASTLINE CARE, INC.** | **13-07676-8-SWH** |
| **EASTERN SHORE ACQUISITION CORPORATION** | **13-07678-8-SWH** |
| **EASTERN SHORE AMBULANCE, INC.** | **13-07679-8-SWH** |
| **MARMAC TRANSPORTATION SERVICES, INC.** | **13-07680-8-SWH** |
| **TRANSMED, LLC,**<br>**D/B/A TRANSMED OF GEORGETOWN, LLC** | **13-07681-8-SWH** |
| **DEBTORS** | **CHAPTER 7** |

## TRUSTEE'S MOTION FOR APPOINTMENT AND COMPENSATION OF RITCHIE BROS. AUCTIONEERS AS AUCTIONEER

NOW COMES Algernon L. Butler, III ("Trustee"), as Chapter 7 Trustee in the above-referenced bankruptcy cases, by and through counsel, and moves the Court to approve the Trustee's employment of Ritchie Bros. Auctioneers (America) Inc. ("Ritchie Bros.") as auctioneer/broker for the estates in these cases and to approve the terms of compensation to be paid to Ritchie Bros, and in support hereof shows the Court as follows:

1.      On December 11, 2013 the above-referenced Debtors filed petitions for relief under Chapter 7 of the Bankruptcy Code, and Algernon L. Butler, III ("Trustee") was appointed as Chapter 7 Trustee to fulfill the duties set forth in 11 U.S.C. § 704.

2.      This matter is a core proceeding pursuant to 28 U.S.C. §157, and the Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The Court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina.

3.    Property of these estates includes approximately 575 ambulances, wheelchair vans, and other vehicles, together with additional items of personal property including defibrillators, stretchers, soft supplies, computers, radios, other and electronic/IT equipment, furniture, and office equipment (the "Property").   The Property is located between approximately 40+/- physical locations in Alabama, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, Virginia and West Virginia.  Most of the premises where the Property is located were leased by the Debtors.

4.    In order to provide for the security of the Property, minimize administrative expenses, and maximize the value that can be obtained by liquidating the Property, it is necessary for the Trustee to employ agents to secure and transport the Property to auction yards and assist the Trustee in vacating the leased premises, and employ auctioneers to assist with the marketing and sale of the Property.

5.    The Trustee desires to sell some or all of the Property at public auction or private sale, and for that purpose desires to employ Ritchie Bros. as auctioneer, and/or broker to locate private sale buyers, for some or all of the Property.

6.    The professional services to be rendered by the Ritchie Bros. shall include, as applicable: conducting an inventory of property to be sold and reporting the results to the Trustee; advising the Trustee of the security of the location of the assets and of any need for special handling; acquiring a location for sale and presale storage; assembling assets to be sold, including cleaning, tagging, sorting, grouping, and the set up of assets to be sold, if necessary; providing and posting of signs; providing and distribution of any sale brochures, including the payment of any postage for the same; providing all advertising text; providing for a registrar/cashier at sale; registration of bidders by name, address, and bidder number; recording each bid by bidder number, item, and amount; providing for checkout at sale; conducting sale and collection of auction proceeds and any other liquidation services for the Trustee as may be necessary for an orderly and complete liquidation; providing the Trustee with a sale report, including bid sheets of items sold, a copy of bidder registration, an accounting of receipts, a written copy of all presale announcements, and copies of all ads and brochures used with the sale; and any and all other duties set forth in the attached Contract to Auction.

7.    To the best of the Trustee's knowledge, Ritchie Bros. is a disinterested party and has no connection with the creditors or any other party in interest or their respective attorneys or auctioneers.  In support of this representation, Ritchie Bros. has affirmed that it is disinterested and is duly licensed and in good standing with the North Carolina Auctioneers Commissions in conformance with the North Carolina General Statute Section 85B-3 and 4.  An affidavit in support of the disinterestedness of Ritchie Bros. will be filed with the Court.

8.    Ritchie Bros. has agreed and understands that it is prohibited from making or allowing any sales to its relatives or other insiders, or to persons assisting it in the conduct of the auction sale, or employed by it in connection with the auction sale, or their relatives, and is prohibited from applying or charging any buyer's premium (other than its administrative fee as set out in the Contract to Auction[1]).

9.    The minimum media advertising requirement for the sale to be performed by Ritchie Bros. shall be as follows: such advertisement as may be necessary and advisable in the judgment of Ritchie Bros..

---

[1]  Buyers will pay an administrative fee of 2.5% on lots selling for more than $2,500 (up to a maximum of 950 per lot) or 10% on lots selling for $2,500 or less.

10.     In return for the services enumerated herein, Ritchie Bros. will be compensated by a commission of 10% of the gross sales proceeds which shall include all regular expenses associated with conducting a sale, such as advertising, fliers, postage for mailings, electronic mail and signage and other out-of-pocket costs incurred as set out in the Contract to Auction (including, but not limited to, the administrative fee and reimbursement of transportation costs).

11.     A copy of the Trustee's contract with Ritchie Bros. entitled "Contract to Auction is attached hereto as **Exhibit A**, and the Trustee requests that the Court enter an order approving the terms of that contract.

12.     The Trustee has also entered into with Ritchie Bros. a separate Equipment Storage Agreement pursuant to which Ritchie Bros. will charge storage fees and other charges for any equipment transported to its auction facilities and which it is not allowed to sell. However, the storage fees and other charges under the Equipment Storage Agreement shall not apply to items of Equipment: (1) that are consigned to Ritchie Bros, for sale by public auction or through its affiliate EquipmentOne; (2) that are purchased by Ritchie Bros.; (3) as to which the Trustee and Ritchie Bros. reasonably determine that the Trustee is not able to convey clear title; or (4) as to which the Bankruptcy Court determines that the Trustee is not able to convey clear title. A copy of the separate Equipment Storage Agreement attached hereto as **Exhibit B**, and the Trustee requests that the Court enter an order approving the terms of that contract.

13.     Ritchie Bros. is aware of the provisions of 11 U.S.C. Section 328 and has agreed, notwithstanding the terms and conditions of employment set out herein, that the Bankruptcy Court may allow compensation different from compensation provided herein if such terms or conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of said terms and conditions.

14.     Ritchie Bros. has agreed to accept employment as auctioneer/broker on an independent contractor basis to the Trustee, has acknowledged its direct fiduciary responsibilities to the United States Bankruptcy Court, and has consented to the jurisdiction of the United States Bankruptcy Court.

15.     In this motion the Trustee seeks authority only to employ Ritchie Bros. on the terms set forth herein and approval of Trustee's contacts with Ritchie Bros. including the terms of compensation to be allowed to Ritchie Bros.. The Trustee does not seek in this motion authority to actually sell any items of Property or to surcharge any lienholders as to the Property with any costs under 11 U.S.C. § 506(c).

-3-

WHEREFORE, the Trustee requests that the Court enter an order authorizing the employment of the Auctioneer/Broker as set forth herein, and that the Court provide such other relief as it may deem just and proper.

BUTLER & BUTLER, L.L.P.

DATED:     December 31, 2013

s/ Algernon L. Butler, III
Algernon L. Butler, III
Attorneys for the Trustee
N.C. State Bar No.  20881
P. O. Box 38
Wilmington, NC 28402
Telephone (910) 762-1908
Facsimile   (910) 762-9441

-4-



**EXHIBIT A**



**RITCHIE BROS.**
Auctioneers

## CONTRACT TO AUCTION
### (CHAPTER 7 TRUSTEE)

**DATED** this _27_ day of December, 2013.

**BETWEEN**:

> **RITCHIE BROS. AUCTIONEERS (AMERICA) INC.**, having its head office at 4000 Pine Lake Road in the City of Lincoln, in the State of Nebraska, 68516
> Web Site: www.rbauction.com
>
> (the "Auctioneer")

OF THE FIRST PART

**AND**:

> **ALGERNON L. BUTLER, III, TRUSTEE OF EASTERN SHORE ACQUISITION CORPORATION (DEBTOR CASE # 13-07678), EASTERN SHORE AMBULANCE, INC. (DEBTOR CASE # 13-07679), AMERICAN AMBULETTE & AMBULANCE SERVICE, INC., d/b/a MEDCORP, d/b/a LIFE AMBULANCE ( DEBTOR CASE # 13-07673), TRANSMED, LLC d/b/a TRANSMED OF GEORGETOWN, LLC (DEBTOR CASE # 13-07681) and MARMAC TRANSPORTATION SERVICES, INC. (DEBTOR CASE # 13-07680)** (collectively the "Debtors"), all pending before the U. S. Bankruptcy Court (EDNC) (the "Bankruptcy Court"), having its head office at 111 North Fifth Avenue, Wilmington, North Carolina, 28401

> Telephone No.      910-762-1908,
> Fax No.            910-762-9441,
> E-Mail Address     albutleriii@butlerbutler.com,
>
> (the "Trustee")

OF THE SECOND PART

## TERMS AND CONDITIONS OF THIS CONTRACT

### Agreement

The Trustee is entering into this Contract pursuant to its appointment by the Bankruptcy Court.

US Ch7 Straight R10_13

Initials _MB_ _JM_

For valuable consideration, the above parties enter into this Contract (the "Contract") which sets out their respective rights, obligations and undertakings regarding the sale by unreserved public auction of all those items described on the Excel spreadsheet named "Master Fleet List KEN 11192013.xlsx" provided by the Trustee to Auctioneer (the "Spreadsheet") together with additional items (including electronic, medical, and office equipment) associated with former business of the Debtors (the "Equipment").

## SECTION 1: AUCTIONEER'S OBLIGATIONS AND RESPONSIBILITIES

1.01    **Sale Date** – The Auctioneer shall, as agent of the Trustee, offer the vehicular Equipment, together with the additional items (including defibrillators, stretchers, soft supplies, computers, radios, other and electronic/IT equipment, furniture, and office equipment) belonging to the bankruptcy debtors and presently located at the premises where the vehicular equipment is located, or delivered by the Trustee to the applicable auction sites, for sale in whole or in part at unreserved public auctions to be held on or about the first or second quarter of the 2014 calendar year, at various cities in the U.S.A to be mutually agreed upon by both parties.

1.02    INTENTIONALLY OMITTED.

1.03    **Commission** – The Auctioneer shall be entitled, at the time of the auction, to a commission based on the gross sale price of the Equipment or any part thereof sold by Auctioneer, as follows:

    (a)    Ten percent (10.0%) for any lots in excess of $2,500.00; and

    (b)    for any lot realizing $2,500.00 or less, Ten percent (10.0%), with a minimum fee of $100.00 per lot.

1.04    **Other** – The Auctioneer shall:

    (a)    allow the Trustee access to records concerning the sale of the Equipment at the auction, excluding the names or contact information of the buyers thereof;

    (b)    supervise the preparation and organization of the auction;

    (c)    provide auctioneers and accountants required for an auction of this type;

    (d)    ensure on-site food catering services are available to those in attendance at the auction;

    (e)    provide listing catalogs of the lots offered for sale to potential buyers at the auction;

    (f)    provide to the Trustee as soon as possible, and on a weekly basis, a complete and itemized inventory of the Equipment, including all vehicles by year, make, model and VIN, and defibrillators, stretchers, soft supplies, computers, radios, other and electronic/IT equipment, furniture, and office equipment;

    (g)    consult with Coldiron regarding the best destination for vehicles which are non-operational or which need major repairs; and instruct and permit the transportation by Coldiron of such vehicles to Copart's facilities for resale to the extent that the sale of such vehicles by Copart (in the reasonable opinion of the

Initials _____ _____

Auctioneer and Coldiron) would be likely to result in greater net sales proceeds to the Trustee; and

(h)     collect and remit State and local sales tax arising upon the sale of the Equipment at the auction.

1.05    Sale Site – The Auctioneer shall provide, at no cost to the Trustee, a suitable site for conduct of the auction.

## SECTION 2: TRUSTEE'S REPRESENTATIONS AND WARRANTIES:

### 2.01    Title and Condition

**The Trustee represents and warrants that:**

(a)     the Trustee will promptly file a motion with the Bankruptcy Court to sell the Equipment pursuant to 11 USC § 363(f) free and clear of any and all registered and unregistered liens, security interests, tax or duty obligations or other encumbrances or contrary claims whatsoever;

(b)     to the best of the Trustee's knowledge, the Equipment is in good operating condition, free of material defects, except as disclosed to the Auctioneer and except that it is normal to assume that a small portion of the vehicular Equipment may not run and may be of salvage value;

(c)     the Trustee has, or will have, complied with all laws, requirements and notices necessary to allow the sale of the Equipment;

(d)     to the best of the Trustee's knowledge, the description of the vehicular Equipment is accurately set forth on the Spreadsheet, and in the case of all motor vehicle Equipment, such Equipment has never been re-built, salvaged or glidered except as disclosed to the Auctioneer;

(e)     to the best of the Trustee's knowledge, all odometer and hour meters on the Equipment reflect actual mileage or usage unless otherwise disclosed to the Auctioneer on the Spreadsheet,

(f)     to the best of the Trustee's knowledge, the offering for sale, advertising or selling of the Equipment will not contravene or infringe upon any patent, copyright, trademark, agreement or similar right of any third party; and

(g)     Trustee and its signatories are duly authorized to enter into this Contract, except that the Trustee's obligations under this Agreement and the compensation payable to Auctioneer shall be subject to the approval of the Bankruptcy Court, and the Trustee shall promptly file a motion for such approval.

## SECTION 3: TRUSTEE'S OBLIGATIONS AND RESPONSIBILITIES:

### 3.01    Refurbishing – The Trustee:

(a)     authorizes the Auctioneer to weld, sandblast, paint, clean, and refurbish, prior to the auction, the Equipment to a standard acceptable to the Auctioneer and the Auctioneer shall be reimbursed for these costs plus ten percent (10%) provided

US Ch7 Straight R10_13                                                    Initials _____

that the total cost shall not exceed five hundred dollars (S500.00) per unit without authorization from Trustee; and

(b)    shall reimburse the Auctioneer for the cost of fuel and batteries as the Auctioneer deems necessary for demonstration and sale of the Equipment.

3.02    **Transportation** –The Auctioneer will assist the Coldiron Companies ("Coldiron") with arranging the necessary transportation of the Equipment to the applicable auction site on or before 30 days prior to the scheduled auction date. The Equipment must be made available:

(a)    free of hazardous materials other than normal operating fuels, oils, and lubricants; and

(b)    in compliance with all applicable Environmental Protection Agency ("EPA") rules and regulations

The Trustee will make his best efforts to deliver to Auctioneer all documents necessary to transfer title to the Equipment, properly endorsed if necessary.

The Auctioneer hereby acknowledges that the Trustee has entered or will enter into a separate agreement with Coldiron in respect of the transportation of the Equipment and other related services (a copy of which shall be promptly provided to the Auctioneer). As a result, the Auctioneer shall work with and assist Coldiron to transport the Equipment to its auction sites. If requested in writing by the Trustee, Auctioneer shall compensate Coldiron for transporting the Equipment to its auction sites. Any amounts advanced by the Auctioneer to Coldiron plus ten percent (10%) shall be deducted from the gross sales proceeds realized from the sale of the Equipment. For the purposes of clarification, the Auctioneer shall have no obligation to compensate Coldiron after the conclusion of the last sale of the Equipment by the Auctioneer.

The Trustee hereby assigns Power of Attorney to the Auctioneer for the limited purpose of executing on the Trustee's behalf, all documents required to transfer title to, and permit registration or ownership of, any part of the Equipment by the purchaser thereof.

3.03    **Title Documents** – The Trustee shall:

(a)    conduct searches or use other means available, as deemed necessary by the Trustee for the disclosure of liens and encumbrances, and included all such creditors in Bankruptcy Court notices seeking authority under 11 USC § 363 to sell the Equipment; in no case shall the Auctioneer have a duty to conduct such searches, nor be responsible for the result thereof; and

(b)    shall pay a document administration fee of S65 per unit for each item of Equipment requiring title or registration documents.

3.04    **Risk of Loss, Insurance** – The Trustee shall be responsible for loss or damage to the Equipment, other than loss or damage arising as a result of the negligence of the Auctioneer, its agents or employees, until the earliest of:

i        the removal of the Equipment from the auction site by the purchaser; or

ii.      receipt by the Trustee of all proceeds from the sale of the Equipment;

Initials

except that the parties both acknowledge that the transportation company engaged to transport the Equipment to the Auctioneer's sites shall insure the Equipment against any loss arising during or as a result of said transportation.

3.05 **Indemnity** – The Trustee shall defend, indemnify and save the Auctioneer, its parents, subsidiaries and affiliates, and each of their officers, directors, shareholders, employees, and agents, harmless against all claims, demands, suits, actions, causes of action, damages, costs or charges whatsoever arising from:

    (a)    any breach of the representations, warranties or covenants set out herein;

    (b)    failure by the Trustee to comply with any laws relating to the Trustee's right to sell the Equipment;

    (c)    hazardous materials associated with the Equipment or contamination resulting from any leakage, spills, or malfunction of the Equipment;

    (d)    deficiencies in the provision of documents required for the purpose of titling or registering any part of the Equipment by any purchaser thereof;

    (e)    any deficiency in the compliance with applicable EPA rules or regulations;

    (f)    any negligence, unlawful act, or willful misconduct of the Trustee in connection with this Contract; and

    (g)    any infringement of a patent, copyright, trademark, agreement or similar right of any third party caused by the offering for sale, advertising or sale of any part of the Equipment.

3.06 **No Buybacks, Unreserved Auction Sale** – The Trustee shall not bid, directly or indirectly, nor allow any other person to bid on the Trustee's behalf or for the Trustee's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction.

Unless specifically authorized by the Trustee in writing, the Auctioneer shall not bid, directly or indirectly, nor allow any other person to bid on the Auctioneer's behalf or for the Auctioneer's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction.

The Trustee acknowledges the auction is unreserved and the Auctioneer shall have no obligation or duty to withdraw the Equipment or any part thereof from the auction sale or to cancel the auction  The Equipment shall be sold to the highest bidder on the date of the auction.

3.07 **No Guarantee** – The Trustee acknowledges that there is no guarantee whatsoever as to the gross proceeds to be realized from the sale of the Equipment at auction.

3.08 **Specific Performance** – Once the Equipment has been transported to the Auctioneer's facility, the Trustee shall not withdraw the Equipment or any part thereof from an auction sale unless:  (i) the Auctioneer breaches any provisions of this Agreement; (ii) the Trustee and the Auctioneer reasonably determine that the Trustee is not able to convey clear title to such Equipment; or (iii) the Bankruptcy Court determines that the Trustee is not able to convey clear title to such Equipment.  If the Trustee is in breach of this provision, then in addition to any other remedies set out in this Contract, the parties hereto agree:

Initials _AM_ _gm_

(a)    the damages to the Auctioneer's business reputation and customer relations are
       not readily ascertainable;

(b)    available remedies at law are not adequate in the event of breach; and

(c)    the Auctioneer may not be made whole solely by monetary recompense;

therefore, the Auctioneer may elect, at its sole option, to apply for an order for specific
performance of this Contract.

3.09   Other – The Trustee shall:

(a)    comply with all legislation, regulations or requirements of any authority of
       competent jurisdiction relating to the sale of the Equipment;

(b)    be responsible for the payment of any tax or duty whatsoever that may legally be
       construed as being the responsibility of the Trustee; and

(c)    provide the Auctioneer with copies of the Bankruptcy Court orders (i) approving
       the sale of the Equipment pursuant to 11 USC § 363(f), and (ii) approving this
       Contract

## SECTION 4: MUTUAL AGREEMENTS

4.01   Timeliness – Time is of the essence of this Contract.

4.02   Waiver – A waiver by either party of any breach of any of the provisions herein shall be
       limited to such particular instance and shall not operate as a waiver of, or be deemed to
       waive, any other or future breaches of the same or any other provisions hereof.

4.03   Legal Costs – Should either party be required to participate in any action or proceeding
       in respect of this Contract, the prevailing party shall be entitled to recover all costs,
       including attorney's fees, incurred as a result thereof.

4.04   Prohibition of Pre-Sale – Neither the Auctioneer nor the Trustee shall sell or offer for
       sale any part of the Equipment prior to the auction without the written permission of the
       other, except that the Trustee reserves the right, in its sole discretion and by written
       notice to Auctioneer, to exclude certain items of Equipment currently located in VA, NC,
       and SC from the auctions  The Trustee shall provide such written notice to the
       Auctioneer within 14 days of the date of this Contract and such Equipment may only be
       sold through Country Boys Auction & Realty or by private sale from the Trustee.

4.05   Default by Trustee:

       If, except as otherwise permitted in, or excused by, this Contract:

(a)    the Trustee withdraws or fails to timely deliver the Equipment or any part thereof
       (other than for reasons beyond its control) or any documents required hereunder,
       or if the auction sale does not occur as a result of the actions or inaction of
       Trustee; or

US Ch7 Straight R10_13                                          Initials _____ _____

(b)    the Trustee, directly or indirectly, bids or permits another to bid on the Trustee's behalf or for the Trustee's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction, or

(c)    the Trustee's representations and warranties set out in Section 2 hereof are not true, complete and correct in all respects;

then:

(d)    commissions shall be payable to the Auctioneer upon demand, based upon the fair market value of any withdrawn or undelivered parts of the Equipment as if they had been sold;

(e)    any advances made by the Auctioneer to the Trustee together with accrued interest shall become due and repayable immediately; and

(f)    the Trustee will upon demand, reimburse the Auctioneer for all out-of-pocket expenses incurred in preparation for the auction.

In the event the Trustee is in violation of subparagraph 4.05 (b), in addition to any other rights or remedies the Auctioneer may have under this Contract, the Auctioneer shall, at its sole discretion, have the right to sell or re-sell the Equipment by public or private sale and the Trustee shall pay to the Auctioneer as liquidated damages in addition to all other amounts due hereunder, an amount equal to twenty percent (20%) of the proceeds realized from such sale or resale.

**4.06**    **Auctioneer's Right to Withdraw From Contract / Rescind Sale** – Notwithstanding any other provisions of this Contract, the Auctioneer shall have the right, at its discretion, to withdraw from this Contract and its obligations hereunder shall be unenforceable by the Trustee if the Trustee is in material breach of any of its representations or warranties hereunder.

If, pursuant to this section, the Equipment or any part thereof is not sold at the auction, such equipment shall be deemed to have been withdrawn by the Trustee and the provisions of subparagraph 4.05(d), (e) and (f) shall apply.

**4.07**    **Use of Equipment** – Trustee authorizes the Auctioneer to operate the Equipment for purpose of demonstrating it at the auction

**4.08**    **Lots** – The Auctioneer shall divide the Equipment into such lots as it may in its absolute discretion deem desirable for sale at the auction. The Auctioneer shall not be liable for any loss or damages claimed in respect of the manner in which the Equipment is divided into lots nor in respect of any failure to divide the Equipment into lots.

**4.09**    **Administrative Fee** – The Trustee acknowledges that the Auctioneer may charge purchasers an administrative fee based on the selling price of each lot.

**4.10**    Intentionally Omitted.

**4.11**    **Collection and Payment of Proceeds** – The Auctioneer shall collect the full proceeds from the sale of the Equipment and:

(a)    the Auctioneer shall within twenty-one (21) days after each applicable auction forward to the Trustee the gross sales proceeds realized from each such auction

Initials

without any deduction for amounts payable to the Auctioneer hereunder, including commission and any advances, together with a detailed accounting of all amounts payable to the Auctioneer hereunder; and

(b)     the Trustee shall within 15 days of receipt of such gross sales proceeds from each auction and detailed accounting as to each sale seek any necessary approval from the Bankruptcy Court in respect of the amounts payable to the Auctioneer. The Trustee shall then forward to the Auctioneer full payment of all amounts payable to the Auctioneer hereunder, including commission and any advances, promptly and no later than 5 days after receiving any approval required from the Bankruptcy Court.

4.12    **Uncollected Proceeds** – The Auctioneer may, as it deems necessary, re-auction any part of the Equipment not sold or paid for at the auction and Trustee acknowledges that no monies shall be payable by the Auctioneer for any part of the Equipment until it has been paid for in full by the purchaser thereof.

4.13    **Other Consignments** – Equipment belonging to other owners may be sold at the auction.

4.14    **Name, Trademark, Logo** – The Trustee authorizes the Auctioneer to use the debtor's name, trademark and logo, as applicable, in advertising the auction.

4.15    **Entire Agreement** – This Contract

(a)     constitutes the entire agreement between the parties and supersedes and takes the place of all prior contracts, understandings, representations or warranties;

(b)     may not be amended except in writing. There are no understandings, agreements, promises, terms, conditions, or warranties expressed or implied, whether orally or by law, statute or trade usage, other than as specifically stated herein; and

(c)     shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

4.16    **Internet Bidding and Timed Auction Lot System** – The Auctioneer may in its sole discretion offer certain lots for sale, in conjunction with its public unreserved auction, to registered bidders using its proprietary online bidding service or using its silent "timed auction lot" system. The Auctioneer shall use its best effort to ensure that such technologies and systems are available at all auctions for which they have been advertised, however at any given sale

(a)     only those lots which the Auctioneer deems appropriate shall be offered using such technologies and systems, and

(b)     certain circumstances concerning the Internet and the technology in use are beyond the Auctioneer's control, and such systems may not be available at any given time or auction.

The Trustee agrees that the Auctioneer shall be held harmless from any claims, demands, suits, actions, causes of action, damages, costs or charges arising from the Auctioneer's decision whether or not to use such technologies or systems or its failure to offer such systems at any time.

Initials _AMb_ _jm_

**4.17**  **Force Majeure** – Neither party shall be held liable or responsible to the other party nor be deemed to have defaulted under or breached this Contract for failure or delay in fulfilling or performing any term of this Contract when such failure or delay is caused by or results from causes beyond the reasonable control of the affected party, including but not limited to fires, strikes, floods, adverse weather that has the potential to injure persons or damage property, acts of war, terrorism, riot, or public disorder, acts of God, lawful acts of public authorities or electronic failures and internet service provider disruptions.

**4.18**  **Jurisdiction and Waiver of Jury Trial** – This Contract is subject to and governed by the laws of the State of North Carolina. Any legal action brought by the parties arising from or relating to this Contract shall be litigated exclusively in the Bankruptcy Court, and the parties irrevocably attorn to the exclusive jurisdiction of such court for the resolution of such disputes. The parties irrevocably waive the right to demand a trial by jury in any dispute arising from or relating to this Contract.

**4.19**  **Notice** – Any notice given hereunder shall be delivered by prepaid registered mail to the parties hereto at the address set out on page 1, with any notice to the Auctioneer sent to the attention of Legal Affairs.

**4.20**  **Headings** – All headings in this Contract are for reference purposes only and this Contract shall be interpreted without reference to such headings.

**4.21**  **Severability** - If any provision of this Contract is held by a court of competent jurisdiction to be contrary to law, then the remaining provisions of this Contract will remain in full force and effect.

**4.22**  **Execution by Facsimile, Electronic Transmission and Counterpart** – This Contract may be executed by fax, PDF, or other electronic transmission and in counterpart, each of which when taken together shall be deemed to constitute an original and form part of the same document, and, upon acceptance by the Auctioneer, be effective and binding on both parties.

**4.23**  **Privacy** – Information provided in this Contract will be retained by the Auctioneer in accordance with its formal Privacy Statement, provided on the Auctioneer's website at www.rbauction.com.

**4.24**  **Approval by Auctioneer** – This entire Contract is subject to the approval of Auctioneer's head office and shall be null and void and of no further force or effect if the Trustee is so notified within twenty days from the date hereof.

**4.25**  The Trustee's obligations under this Contract and the compensation payable to Auctioneer shall be subject to the approval of the Bankruptcy Court, and the Trustee shall promptly file a motion for such approval. The Trustee shall ensure that the Auctioneer is given an opportunity to review, comment and approve the content of the motion and related material before the same are filed with the Bankruptcy Court.

**4.26**  The Trustee has entered into this Contract only in its capacity as a court

US Ch7 Straight R10_13

Initials _____

Page 10

appointed Chapter 7 Trustee, and not in his individual capacity, and shall have no individual liability under this Contract.

IN WITNESS WHEREOF this Contract has been executed by the parties hereto as of the date first above written.

| SIGNED & DELIVERED | |
| By Trustee in the presence of: | ) |
| | ) |
| _(Signature of Witness)_ | ) (Signature of Trustee) |
| | ) |
| Jenna F. Butler | ) Algernon L. Butler, III, Trustee |
| (Print Name of Witness) | ) (Print Name of Trustee) |
| | ) |
| 127 Racine Dr. | ) |
| Address | ) |
| | ) |
| Wilmington, NC 28403 | ) |
| | ) |
| Attorney | ) Cust. #: |
| Occupation | ) |

RITCHIE BROS. AUCTIONEERS (AMERICA) INC.

Per: _____
(Signature)

_____
(Print Name)

US Ch7 Straight R10_13

Initials _____ _____

Page 11

### Attached to and forming part of
### CONTRACT TO AUCTION

### LIENHOLDER INFORMATION

TRUSTEE NAME: _____

SALE SITE: _____ SALE DATE: _____

| Sch A # | Lienholder | Contact Person | Phone # & Fax # | Amount |
|---------|-----------|----------------|-----------------|--------|
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |

**To Whom It May Concern:**

The undersigned party hereby authorizes Ritchie Bros. Auctioneers (America) Inc. (the "Auctioneer") to conduct searches and contact creditors as required for the disclosure of liens, charges and encumbrances and to determine amounts claimed against the equipment (the "Equipment") described on the attached Schedule "A". The undersigned further consents to the release to the Auctioneer of any and all information pertaining to any such lien, charge or other encumbrance or security interest claimed in any assets of the undersigned.

Dated this __29__ day of __December__ , 20 __13__

_____
Name of Owner

_____ , Trustee
Signature

_____
Name of Signatory (if different from Owner)

__Chapter 7 Trustee__
Position

OWNER CODE: _____

Initials _____  _____

EXHIBIT

B

# EQUIPMENT STORAGE AGREEMENT

DATED this ﹍ day of December, 2013

BETWEEN:

> RITCHIE BROS. AUCTIONEERS (AMERICA) INC., having its head office
> at 4000 Pine Lake Road, Lincoln, Nebraska 68506
> ("RBA")

AND:

> ALGERNON L. BUTLER, III, TRUSTEE OF EASTERN SHORE
> ACQUISITION CORPORATION (DEBTOR CASE # 13-07678),
> EASTERN SHORE AMBULANCE, INC. (DEBTOR CASE # 13-
> 07679), AMERICAN AMBULETTE & AMBULANCE SERVICE,
> INC., d/b/a MEDCORP, d/b/a LIFE AMBULANCE ( DEBTOR
> CASE # 13-07673), TRANSMED, LLC d/b/a TRANSMED OF
> GEORGETOWN, LLC (DEBTOR CASE # 13-07681) and MARMAC
> TRANSPORTATION SERVICES, INC. (DEBTOR CASE # 13-
> 07680), all pending before the U. S. Bankruptcy Court (EDNC) (the
> "Bankruptcy Court"), having its head office at 111 North Fifth Avenue,
> Wilmington, North Carolina, 28401

> (the "Trustee")

WHEREAS:

A.  The Trustee is entering into this Equipment Storage Agreement (the "Agreement")
pursuant to its appointment by the Bankruptcy Court.

B.  The Trustee wishes to contract with RBA to provide storage for certain items of
equipment (the "Equipment") described on the Excel spreadsheet named "Master
Fleet List KEN 11192013 xlsx" provided by the Trustee to RBA.

C.  The Trustee needs to store the Equipment (including vehicles, electronic, medical, and
office equipment) until such time as the Bankruptcy Court and other parties have
determined how the Equipment will be dealt with.

D.  RBA is willing to arrange the transportation of the Equipment to its auction facilities in
Lebanon, TN, Newnan, GA, Butner, N C, South Vienna, OH and/or North East, MD
(collectively, the "Facilities" and each a "Facility") and temporarily store such
Equipment there upon the terms set forth in this Agreement.

In consideration of the respective obligations of the parties set forth below, and such other
valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties
hereby agree as follows:

1.  **Storage of and Transportation of Equipment** – During the Term of this Agreement (as
defined below), RBA shall provide storage for the Equipment at the Facilities.  RBA
agrees to provide storage for Equipment that is free of all contents and substances other
than normal operating fluids and lubricants and therefore RBA reserves the right to refuse

storage of any item of Equipment containing any hazardous substances or visibly leaking contaminants.

RBA shall make the Equipment available to the Trustee and/or the Trustee's agents for inspection during normal business hours and at other times with reasonable prior notice.

RBA shall store Equipment in a careful and prudent manner, consistent with the storage of similar equipment. Neither RBA nor its employees or contractors shall use Equipment, except as necessary, to store, test or safeguard Equipment. RBA will not release any Equipment without first receiving written approval from the Trustee that specifically identifies the Equipment to be released.

RBA shall make arrangements to have the Equipment transported to the Facilities by reputable transportation companies. RBA shall provide the Trustee with a confirmation of the Equipment that has been delivered to each Facility on a weekly basis.

2.   **Offloading of Equipment** – RBA, together with any transportation companies retained by RBA to transport the Equipment, shall be solely responsible for offloading Equipment.

3.   **Storage, Transportation, Offloading and Valuation Fees** – The Trustee shall pay RBA: (a) a fee of $25.00 to check-in each item of vehicular Equipment; (b) a flat storage fee of $2.00 per day for each item of vehicular Equipment that is operational during the Term; and (c) a flat storage fee of $6.00 per day for each item of vehicular Equipment this is non-operational during the Term. Such fees shall be due and payable in full 15 days from receipt of invoice after the earlier of: (1) the release of the applicable piece of Equipment from the applicable Facility; or (2) the expiration of the Term. Notwithstanding the foregoing, no fees shall be applied to items of Equipment: (1) that are consigned to RBA for sale by public auction or through EquipmentOne; (2) that are purchased by RBA; (3) the Trustee and RBA reasonably determine that the Trustee is not able to convey clear title to; or (4) the Bankruptcy Court determines that the Trustee is not able to convey clear title to.

The Trustee shall reimburse RBA for the costs RBA incurs to arrange for the transportation of the Equipment to the applicable Facility plus ten percent (10%). Such costs shall be due and payable in full 15 days from receipt of invoice after the earlier of: (1) the release of the applicable piece of Equipment from the applicable Facility; or (2) the expiration of the Term. For the purposes of clarification, such costs shall not be waived in any circumstances, unless agreed by the parties.

The Trustee shall pay RBA a fee of $125.00 per hour for any Equipment that requires the assistance of RBA personnel and equipment (forklifts and wheel loaders) during offloading. Such costs will be due and payable in full 15 days from receipt of invoice after the earlier of: (1) the release of the applicable piece of Equipment from the applicable Facility; or (2) the expiration of the Term. For the purposes of clarification, such costs shall not be waived under any circumstances, unless agreed by the parties.

The Trustee shall pay RBA a flat valuation fee of $50.00 for each item of Equipment that RBA provides the Trustee a valuation for pursuant to a written request for such valuation by the Trustee. Such valuation fees shall be due and payable in full 15 days from receipt of invoice after the earlier of: (1) the release of the applicable piece of Equipment from the applicable Facility; or (2) the expiration of the Term. Notwithstanding the foregoing, no valuation fee shall be applied to items of Equipment that are: (1) consigned to RBA by for sale by public auction or through Equipment One; or (2) purchased by RBA.

2

4.  **Maximum Storage Period** – In the event any Equipment remains at the applicable
Facility for a period greater than one hundred eighty (180) days (or such other period
agreed to by the parties), without being either: (1) consigned to RBA for sale by public
auction or through EquipmentOne; or (2) purchased by RBA, RBA shall be entitled to
demand in writing that the Trustee either remove or consign such Equipment from the
applicable Facility within 30 days after the Trustee receives such written demand.

5.  **Risk of Loss** – The Trustee shall be responsible for loss or damage to the Equipment,
other than that arising from the negligence or misconduct of RBA, its agents or
employees, during the period the Equipment is stored at the applicable Facility. The
Trustee shall insure the Equipment, with the RBA as additional insured, to its fair market
value against all perils.

6.  **Indemnity** – The Trustee shall defend, indemnify and save harmless RBA from any and
all liabilities, damages, costs (including reasonable attorney's fees), claims, suits or
actions arising out of any property damage or injury to a person or persons, including
death resulting at any time therefrom, arising out of:

   (a)   the attendance of the Trustee's employees, agents, subcontractors, purchasers, or
         prospective purchasers at the applicable Facility, except for any transportation
         company hired to transport the Equipment to the applicable Facility; and

   (b)   the inspection or use of any Equipment by the Trustee's employees, agents,
         subcontractors, purchasers, or prospective purchasers, except for any
         transportation company hired to transport the Equipment to the applicable
         Facility.

7.  **Title to Equipment** – RBA acknowledges that, (i) it shall have no right, title or interest
in or to any Equipment, (ii) it will not, and will not permit others to, lease, rent, assign,
encumber or dispose of the Equipment, and (iii) it will not assert any actual or alleged
right, title or interest in or to the Equipment against the Trustee (or, to the extent that the
Trustee is managing Equipment for another party (such party, the "**Third Party
Owner**"), against the Third Party Owner, or any purchaser of the Equipment, other than
its right to hold the Equipment in connection with providing the storage anticipated
hereunder. At the Trustee's request, RBA shall execute any lawful instrument necessary
to file or record the Trustee's interest in Equipment and shall cooperate with the Trustee
in delivering any notice required by law regarding RBA's status as a consignee or bailee
of Equipment under the UCC and shall affix in a prominent position on each unit of
Equipment plates, tags or other identifying labels showing ownership, security or other
interest thereof by the Trustee.

8.  **Term** – This Agreement shall have an initial term of one hundred eighty (180) days from
the date hereof (the "**Term**")

9.  **Termination for Cause** – This Agreement may be terminated on 5 days' prior written
notice by the non-defaulting party, if the other party fails to comply with any material
term or condition of this Agreement and such failure continues for a period of 30 days
following written notice of such failure from the non-defaulting party detailing the
alleged failure, in which case the Trustee shall promptly remove from all RBA's auction
sites all Equipment that has not been either consigned for auction with RBA or purchased
by RBA.

3

10.      <u>Notice</u> – any notice given hereunder shall be either delivered, sent by facsimile or by prepaid registered mail to the parties hereto at the address set out on page 1.

11.      The Trustee reserves the right, in his sole discretion and by written notice to RBA before such items are transported to the Facilities, to exclude certain items from the Equipment, including the items located in VA, NC, and SC.

12.      The Trustee's obligations under this Agreement and the compensation payable to RBA shall be subject to the approval of the Bankruptcy Court, and the Trustee shall promptly file a motion for such approval. The Trustee shall ensure that RBA is given an opportunity to review, comment and approve the content of the motion and related material before the same are filed with the Bankruptcy Court.

13.      The Trustee has entered into this Agreement only in its capacity as a court appointed Chapter 7 Trustee, and not in his individual capacity, and shall have no individual liability under this Agreement.

IN WITNESS WHEREOF the parties have executed this Agreement as of the date first above written.

RITCHIE BROS. AUCTIONEERS (AMERICA) INC.

By: _____
Name: Jerilyn Nicholsen
Title: National Financial Accounts Manager

ALGERNON L. BUTLER, III, TRUSTEE OF EASTERN SHORE ACQUISITION CORPORATION (DEBTOR CASE # 13-07678), EASTERN SHORE AMBULANCE, INC. (DEBTOR CASE # 13-07679), AMERICAN AMBULETTE & AMBULANCE SERVICE, INC., d/b/a MEDCORP, d/b/a LIFE AMBULANCE ( DEBTOR CASE # 13-07673), TRANSMED, LLC d/b/a TRANSMED OF GEORGETOWN, LLC (DEBTOR CASE # 13-07681) and MARMAC TRANSPORTATION SERVICES, INC. (DEBTOR CASE # 13-07680)

By: _____
Name: Algernon L. Butler, III, Trustee
Title: Chapter 7 Trustee

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that he is over eighteen (18) years of age, and that the

### TRUSTEE'S MOTION FOR APPOINTMENT AND COMPENSATION OF RITCHIE BROTHERS AS AUCTIONEER

in the above captioned case was this day served upon the below named persons as follows:

By electronic service through CM/ECF and via first class mail:

Marjorie K. Lynch, Esquire
Bankruptcy Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

Ryan P. Ethridge
Alston & Bird LLP
4721 Emperor Blvd., Suite 400
Durham, NC 27703

Henry L. Kitchin Jr.
McGuireWoods LLP
300 North Third Street, Suite 320
Wilmington, North Carolina 28401

Oliver Carter III
Attorney for Branden Engle
408 Market Street
Wilmington, NC 28401

David A. Greer, Esquire
The Law Offices of David A. Greer PLC
500 East Main Street, Suite 1225
Norfolk, VA 23510

Ranj Sangra, Esquire
Ritchie Bros. Auctioneers
9500 Glenlyon Parkway
Burnaby, B.C., V5J 0C6

By email at the address shown below:

Marjorie K. Lynch, Esquire
Bankruptcy Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601
*Via email to: marjorie_lynch@nceba.uscourts.gov*

Ryan P. Ethridge
Alston & Bird LLP
4721 Emperor Blvd., Suite 400
Durham, NC 27703
*Via email to: ryan.ethridge@alston.com*

Henry L. Kitchin Jr.
McGuireWoods LLP
300 North Third Street, Suite 320
Wilmington, North Carolina 28401
*Via email to: hkitchin@mcquirewoods.com*

Oliver Carter III
Attorney for Branden Engle
408 Market Street
Wilmington, NC 28401
*Via email to: oliver@cartercarterlaw.com*

David A. Greer, Esquire
The Law Offices of David A. Greer PLC
500 East Main Street, Suite 1225
Norfolk, VA 23510
*Via email to: dgreer@davidgreerlaw.com*

Ranj Sangra, Esquire
In-house Attorney for Ritchie Bros. Auctioneers
9500 Glenlyon Parkway
Burnaby, B.C., V5J 0C6
*Via email to: rsangra@rbauction.com*

-5-

BUTLER & BUTLER, L.L.P.

DATED:      December 31, 2013

s/ Algernon L. Butler, III
P.O. Box 38
Wilmington, NC 28402

-6-