# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WILMINGTON DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **AMERICAN AMBULETTE &** | ) | **CASE NO.  13-07673-8-SWH** |
| **AMBULANCE SERVICE, INC.** | ) | |
| **DBA MEDCORP** | ) | **MOTION FOR RELIEF FROM STAY** |
| **DBA LIFE AMBULANCE** | ) | |
| | ) | **APPLYING 11 U.S.C. § 362(e)** |
| **SSN:  xxx-xx-5916** | ) | |
| **DEBTOR** | ) | |

Pursuant to Section 362(d) of Title 11 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code") and Bankruptcy Rules 4001 and 9014, PNC EQUIPMENT FINANCE, LLC (PNC) through counsel, hereby moves the Court for an Order for relief from the automatic stay provisions of 11 U.S.C. §362(a).

In support of its Motion, PNC shows unto the Court that:

1.  On or about December 11, 2013, the Debtor filed a petition with the United States Bankruptcy Court for the Eastern District of North Carolina for relief under Chapter 7 of the United States Bankruptcy Code.

2.  This Court has jurisdiction over the Motion pursuant to the provisions of 11 U.S.C. §362 and Bankruptcy Rules 4001 and 9014.  This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §1334, the Referral Order entered herein by the Chief United States District Court Judge for the Eastern District of North Carolina and 11 U.S.C. §362.  Bankruptcy Rules 4001 and 9014 apply.  This matter is a core proceeding as defined in 28 U.S.C. §151 and 157(b) and to the extent any non-core issues are raised, PNC consents to the jurisdiction of this Court for determination of all issues, including non-core issues.

3.  Algernon L. Butler, III is the duly appointed Trustee in the Debtor's Chapter 7 proceeding.

4.  On or about May 19, 2011, American Ambulette & Ambulance Service, Inc. executed a Lease Agreement ("Agreement") in the original amount of $132,172.57.  A true and correct copy of the Agreement is attached hereto and incorporated herein by reference as **Exhibit "A."**

5.  The above mentioned Agreement creates a security interest in vehicle collateral identified below and as described in the following four (4) Certificates of Title.  True and correct copies of the four (4) Certificates of Title are attached hereto and incorporated herein by reference as **Exhibits "B-E."**

      1)      2011 Ford138 E150 Cargo Van bearing Vehicle Identification Number 1FTNE1EW7BDA40890 and Certificate of Title Number 1809262790.

2)   2011 Ford138 E150 Cargo Van bearing Vehicle Identification Number
     1FTNE1EW2BDA42868 and Certificate of Title Number 1809262789.

3)   2011 Ford138 E150 Cargo Van bearing Vehicle Identification Number
     1FTNE1EW4BDA42869 and Certificate of Title Number 1809253008.

4)   2011 Ford138 E150 Cargo Van bearing Vehicle Identification Number
     1FTNE1EW7BDA53977 and Certificate of Title Number 1809253009.

6. At the time of filing herein, the Debtor was in default on his obligations to PNC.

7. PNC is a secured creditor in the Debtor's bankruptcy proceeding. The Debtor is in substantial default. The total arrearage due under the Agreement through January 31, 2014, is at least $7,665.81. A breakdown of the arrearage is as follows:

Payment(s)      11/13 - 01/14            $2,555.27  x  3 =              $7,665.81

TOTAL ARREARAGE THROUGH January 31, 2014                             $7,665.81

8. As of the filing of this Motion, the approximate unpaid accelerated balance on the above described debt to Movant was $76,659.10.

9. The fair market value of the four (4) vehicles is $80,000.00, or approximately $20,000.00 for each.

10.  Movant is not adequately protected and the Debtor has not offered adequate protection.

11.  Movant is entitled to Relief from Stay to repossess its security interest in the property identified in the Certificates' of Title attached hereto and incorporated herein by reference and to pursue all other state remedies for sums due under the security documents.

12.  Movant will suffer irreparable injury, loss and damage in the event relief is not granted.

13.  Movant has incurred reasonable attorney's fees and costs in connection with the prosecution of this motion.

BASED UPON THE FOREGOING, Movant respectfully prays that:

1. The stay imposed by 11 U.S.C. §362(a) be terminated, annulled or modified to permit Movant to repossess its security interest in the property identified in the Certificates' of Title attached hereto and to pursue all other state remedies for sums due under the security documents; that said relief is immediate, and the waiting period of F.R.B.P. 4001(a)(3) does not apply; or in the alternative that it receive adequate protection from the Debtor;

2. The hearing of this motion be the final hearing under 11 U.S.C. §362(c) and any preliminary hearing be consolidated herein and Orders entered accordingly;

3. It be granted reasonable attorney's fees pursuant to 11 U.S.C. §506; and,

4.  It have such other and further relief as the Court deems just and proper.

This the 23rd day of January, 2014.

HUTCHENS LAW FIRM

BY:  s/S. Troy Staley
     S. TROY STALEY
     Attorney for Movant
     State Bar No: 43229
     Post Office Box 2505
     4317 Ramsey Street
     Fayetteville, NC 28302
     (910) 864-2668

BY:  s:/Sarah D. Miranda
     Sarah D. Miranda
     Attorney for Movant
     State Bar No.  29354
     Post Office Box 2505
     4317 Ramsey Street
     Fayetteville, NC 28302
     (910) 864-2668

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.  THE PURPOSE OF THIS
COMMUNICATION IS TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED
FOR THAT PURPOSE.

Firm Case No: 1129034 (BK.FAY)

**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **AMERICAN AMBULETTE &** | ) | **CASE NO. 13-07673-8-SWH** |
| **AMBULANCE SERVICE, INC.** | ) | |
| **DBA MEDCORP** | ) | **CHAPTER 7** |
| **DBA LIFE AMBULANCE** | ) | |
| **SSN:  XXX-XX-5916** | ) | |
| | ) | |
| DEBTOR | ) | |

## NOTICE OF OPPORTUNITY FOR HEARING

TAKE NOTICE that an application or motion has been filed by PNC Equipment Finance, LLC, its successors and/or assigns, as their respective interests may appear. A copy of the application or motion accompanies this Notice.

TAKE FURTHER NOTICE that any response, including objection, to the relief requested in the attached application or motion, should be filed with the Clerk of the Bankruptcy Court within fourteen (14) days of the date of this Notice and a copy served on the attorney identified below and upon other parties as required by law or court order.  Any response shall clearly identify the specific motion or application to which the response is directed.

TAKE FURTHER NOTICE that if a response and a request for a hearing is filed by the Debtor, Trustee, or other parties in interest named herein in writing within the time indicated, a hearing will be conducted on the Motion and response thereto at a date, time and place to be later set by this Court and all interested parties will be notified accordingly.  If no request for a hearing is timely filed, the Court may rule on the Motion and response thereto ex parte without further notice.

This the 23rd day of January, 2014.

HUTCHENS LAW FIRM

BY:    s/S. Troy Staley
        S. TROY STALEY
        Attorney for Movant
        State Bar No: 43229
        Post Office Box 2505
        4317 Ramsey Street
        Fayetteville, NC 28302
        (910) 864-2668

    BY:  s:/Sarah D. Miranda
        Sarah D. Miranda
        Attorney for Movant
        State Bar No.  29354
        Post Office Box 2505
        4317 Ramsey Street
        Fayetteville, NC 28302
        (910) 864-2668

Firm Case No: 1129034 (BK.FAY)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date this paper was served upon the following parties by depositing a copy enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service or via the appropriate electronic servicer:

Debtor:
American Ambulette & Ambulance Service, Inc.
379 North Front Street
Wilmington, NC 28401

Attorney for Debtor:
Ryan P. Ethridge
4721 Emperor Blvd., Suite 400
Durham, NC 27703

Chapter 7 Trustee:
Algernon L. Butler, III
PO Box 38
Wilmington, NC 28402

Bankruptcy Court Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

This the 23rd day of January, 2014.

HUTCHENS LAW FIRM

BY:     s/S. Troy Staley
        S. TROY STALEY
        Attorney for Movant
        State Bar No: 43229
        Post Office Box 2505
        4317 Ramsey Street
        Fayetteville, NC 28302
        (910) 864-2668

    BY:  s:/Sarah D. Miranda
        Sarah D. Miranda
        Attorney for Movant
        State Bar No. 29354
        Post Office Box 2505
        4317 Ramsey Street
        Fayetteville, NC 28302
        (910) 864-2668

Firm Case No: 1129034 (BK.FAY)

(Page 23 of 74)

  

 RBC Bank"

Leasing & Equipment Finance

LESSEE:  American Ambulette & Ambulance Service, Inc.

SCHEDULE NO. ▮▮▮▮▮▮
DATED:  _May 19_, 2011

TO MASTER LEASE AGREEMENT NO. 1
DATED:  _May-19_, 2011

All terms, including all definitions, of the referenced Master Lease Agreement are hereby incorporated into this Schedule which, together with the Master Lease Agreement, constitute a lease (this "Lease") covering the equipment (the "Equipment") described in Exhibit A attached hereto and incorporated by reference herein.  The terms of this Schedule shall supersede any contrary terms in the Lease.

A.     Definitions and Basic Terms.

    1.    Rent shall be payable on the following basis (each, a "Period" for purposes of this Lease): monthly.

    2.    Lessor's Cost (Total): $132,172.57

    3.    Supplier: See Exhibit A

    4.    Term of Lease (No. of Periods): 60

    5.    Commencement Date: As shown on Acceptance Certificate.

    6.    Location of Equipment: See Exhibit A

    7.    Commercial General Liability Insurance Requirement: With respect to this Schedule only, the amount of commercial general liability insurance required pursuant to Section VIII(a)(ii) of the Master Lease is One Million dollars ($1,000,000.00) per occurrence, One Million dollars ($1,000,000.00) annual aggregate.

    8.    Exhibits.  The Equipment Description is attached hereto and made a part hereof.

B.     Rent.  Rent payment for the Equipment shall be due on the _19th_ day of each Period, in the amount of $2,555.27, the first such payment being due on _June 19_, 2011.  Lessee shall also be responsible for rental, sales and/or use taxes of $0.00 per Period, subject to adjustment, and for other taxes and amounts from time to time as provided in this Lease.  All rent and other payments due hereunder shall be delivered to Dept. 932, P. O. Box 1070, Charlotte, NC 28201-1070, or such address as Lessor shall specify in writing from time to time.

C.     Conditions to Lease of Equipment.  Any obligation of Lessor to purchase the Equipment and to lease the Equipment to Lessee shall be subject to the execution by Lessee of the applicable Exhibits to this Schedule and, unless waived in writing by Lessor, the delivery by Lessee of the following additional documentation, together with any others specified by Lessor: (a) Form W-9 – Request for Taxpayer Identification Number and Certification (or information as required by Lessor); (b) Taxpayer Identification or Social Security Number of any Guarantors (or information as required by Lessor); (c) Original vendor invoice (or, at Lessor's election, satisfactory proof of payment); (d) UCC-1 financing statement (Lessor is authorized to file any and all UCC-1 Financing Statements deemed necessary or desirable by Lessor); (e) Pay proceeds letter; (f) Certified resolution of Lessee's Board of Directors (or similar governing body); (g) Any personal and/or corporate Guarantees (if required); (h) Certificate of Insurance naming Lessor as



loss payee and additional insured; and (i) Manufacturer's Statement of Origin and/or Titles (Motor Vehicles Only).

D.     **Security Deposit; Additional Representations and Warranties.**   In addition to all representations and warranties in the Master Lease Agreement, Lessee hereby represents and warrants that: (1) as of the date hereof, there has been no material adverse change in Lessee's financial condition since the date of the Master Lease Agreement; (2) this Lease is the UNCONDITIONAL, NON-CANCELABLE obligation of Lessee; (3) Lessor may fill in certain terms of this Lease to conform with the Acceptance Certificate to be executed by Lessee; (4) NO VARIATION OR MODIFICATION OF THE TERMS OF THIS LEASE SHALL BE VALID UNLESS IN A WRITING AND SIGNED BY LESSOR; and (5) it has read the Lease, and all agreements and waivers contained therein, and has discussed the Lease and all agreements and waivers therein with its counsel to the extent it deems necessary.

E.     **Title, Security Interest, Interest.**   Notwithstanding anything to the contrary in the Lease, this Lease shall constitute a lease intended as security and not a true lease, it being the intention of Lessee and Lessor, and the economic reality, that this Lease creates a "security interest" as defined in Section 1-201(37) of the UCC and does not create a "lease" as defined under Section 2A-103 of the UCC. The relationship described herein as the lessor/lessee relationship is more accurately characterized as a lender/borrower relationship or a secured party/debtor relationship, and title shall at all times remain in the name of Lessee.  Lessee hereby pledges, grants, bargains, transfers and conveys to Lessor a first priority security interest in, and acknowledges that Lessor shall have a continuing security interest in, the Equipment (including all inventory, fixtures and other property comprising the same) together with any related software (embedded therein or otherwise), any and all general intangibles, additions, attachments, accessories and accessions to the Equipment, any Improvements (as defined in Section G) and any subleases, chattel paper, accounts, security deposits and proceeds relating to the foregoing. Notwithstanding anything to the contrary herein, including the date upon which the Lease Term commences, any security interest granted pursuant to this Section E shall become effective between the parties with respect to any Items as soon as Lessee receives possession thereof.  Any portion of the rent payable hereunder for the Equipment that is deemed to be interest or time price differential that exceeds the maximum rent or amount permitted by law shall be reduced to the highest rate or amount that does not exceed such maximum rate of interest or time price differential.

F.     **Improvements; Identification.**  Provided that Lessee is not in default under this Lease, Lessee may at its sole cost and expense make any alterations, additions, modifications or attachments ("Improvements") to the Equipment provided that Lessee notifies Lessor in advance of such action in writing and provided further that such Improvements, in Lessor's judgment (1) do not reduce the value or general usefulness of the Equipment, (2) do not impair the certification, performance, safety, quality, capability, use or character of the Equipment, or alter the purpose for which such Equipment was leased under this Lease, (3) do not expose Lessor or any of the Equipment to any lien, claim, security interest or other adverse interest of circumstance, (4) do not adversely affect insurance coverage benefiting Lessor, and (5) are of a kind that customarily are made by lessees or purchasers of equipment similar to the Equipment.

G.     **Stipulated Loss Value; Prepayment.**  Notwithstanding anything to the contrary in the Master Lease Agreement, the "Stipulated Loss Value" of an Item shall mean an amount equal to all rent for such Item (as allocated by Lessor) payable with respect to each and every period after the Payment Date, discounted to present value at (6.000%) per annum plus (i) any then due rents and (ii) any fees paid upfront by the bank in connection with this schedule.  LESSEE MAY NOT PREPAY RENT DUE EXCEPT AS FOLLOWS:  If no Event of Default or event that with lapse of time or notice or both would become an Event of Default has occurred and is continuing, Lessee may prepay in full all rent due on a day when rent is due hereunder by paying to Lessor the Stipulated Loss Value, together with a premium (which is to compensate Lessor for unanticipated repayment and not a penalty) equal to (1) one and one-half percent (1.5%) of the Stipulated Loss Value, multiplied by (2) the number of years and/or partial years remaining on the Lease Term.



**H.    Special Equipment Provisions.**   The Special Equipment Provisions, if any, set forth on Attachment 1 hereto, are incorporated herein by reference and made a part of this Lease.

**I.    Purchase Option.**   At the end of the Lease Term, Lessee shall have the right to purchase the Equipment for the sum of One Dollar ($1.00).

**J.    Other Options.**   The Other Options, if any, set forth on Attachment 3 hereto, are incorporated herein by reference and made a part of this Lease.

American Ambulette & Ambulance Service, Inc.
("Lessee")

By: _____

Name: _____ MICNA2  FRANIS _____

Title: _____ DIRECTOR _____

Accepted in Birmingham, Alabama, this the _19th_ day of ___June___, 2011.

RBC Bank (USA)
("Lessor")

By: _____

Name: Patricia T. Reid

Title: Managing Director

 

**EXHIBIT A**
**TO**
**SCHEDULE NO.** ▬▬▬▬
DATED: _May 19_____, **2011**

The following item(s) of equipment are leased under the Schedule referenced above and constitute(s) the "Equipment":

Supplier:     *Valley Ford Truck*
              *5715 Canal Road (Between Rt. 17 & Rockside)*
              *Cleveland, Ohio 44125*

*Four (4) new 2011 Ford 138 E150 Cargo Vans Model E1EK VIN #'s 1FTNE1EW7BDA40890,*
*1FTNE1EW2BDA42868, 1FTNE1EW4BDA42869 and 1FTNE1EW7BDA53977 including all*
*attachments and accessories.*

*Location of Equipment:*

*2107 Jergens Road*
*Dayton, OH 45404*

(Page 13 of 74)

 

 RBC Bank™

Leasing & Equipment Finance

## MASTER LEASE AGREEMENT NO. 1

This MASTER LEASE AGREEMENT, dated _May 19_____, 2011, (this "Lease"), is among American Ambulette & Ambulance Service, Inc., a(n) Ohio corporation ("Lessee") with a principal place of business at 2107 Jergens Road, Dayton, Ohio 45404 and a mailing address of P.O. Box 598, Accomac, VA 23110, and RBC Bank (USA), a North Carolina banking corporation ("Lessor"), with a principal place of business at 1927 First Avenue North, Eighth Floor, Birmingham, Alabama 35203 and a mailing address of P.O. Box 428, Birmingham, Alabama 35201.

I.        GENERAL PROVISIONS.

(a)        Subject to the terms and conditions hereof, Lessor may lease to Lessee Items of property (the "Equipment", individual Items of Equipment being sometimes herein called, individually, an "Item" or, collectively, "Items") described in each schedule of leased equipment (a "Schedule" or, collectively, the "Schedules") now or hereafter identified to this Lease. Each Schedule shall constitute a separate lease, and the terms "Lease" or "this Lease" as used herein shall refer to each and every Schedule that incorporates this Lease and any other writing that by its terms is intended to be made a part of any such Schedule or this Lease.

(b)        This Lease is not a legal commitment to lend money or lease any Equipment, and Lessor shall not have any obligation to enter into any Schedule. Notwithstanding any execution by Lessor of any Schedule, any obligation of Lessor to purchase the Equipment described in such Schedule and to lease such Equipment to Lessee shall be subject to the following conditions: (i) Lessee shall not be in default under any Lease, and (ii) Lessor shall have received in form and substance satisfactory to Lessor: (A) a fully executed and completed Schedule containing any additional terms applicable to the Equipment leased thereunder to which all exhibits, addenda and other attachments referenced therein are attached, and (B) such other documentation required by Lessor. LESSEE SHALL HAVE NO RIGHT TO CANCEL OR TERMINATE THIS LEASE AS TO ANY ITEM OR TO PURCHASE ANY ITEM FROM LESSOR UNLESS EXPRESSLY PROVIDED IN THE SCHEDULE FOR SUCH ITEM.

II.        TERM, RENT AND PAYMENT, LATE CHARGES.        The term of this Lease (the "Lease Term") for each Item shall be the period specified as the "Term of Lease" in the Schedule applicable to such Item, together with any renewal or extension of such original Term of Lease effected as provided herein. The Lease Term shall begin on the commencement date (the "Commencement Date") stated on the Certificate of Delivery and Acceptance (each, an "Acceptance Certificate") that is executed by Lessee and identified to the Schedule for such Item, in form and substance satisfactory to Lessor. Lessee acknowledges that certain of its duties hereunder begin before the Commencement Date and/or continue past the expiration or termination of this Lease, as expressly provided herein. All rent shall be payable in accordance with the terms and conditions of this Lease and any applicable Schedule. If rent or any other amount due hereunder is not received within ten (10) days after the date required hereunder, Lessee shall pay a late charge equal to five percent (5%) of such delinquent payment, or if Lessor shall so elect, and to the extent allowed by applicable law, interest at a rate of one and one-half percent (1.5%) per month on such delinquent payment calculated from the date such payment was due. LESSEE ACKNOWLEDGES THAT SUCH LATE CHARGE IS REASONABLE COMPENSATION FOR LESSOR'S ADDITIONAL EXPENSE AND EXPOSURE AND IS NOT A PENALTY.

III.        SELECTION, DELIVERY AND ACCEPTANCE.

(a)        Lessee acknowledges and agrees that (i) it has selected the Equipment and has not relied on any representation or warranty by Lessor in connection with such selection; (ii) Lessor is not an agent of the corporations, partnerships, limited liability companies or other persons or business entities from whom the Equipment was purchased (the "Suppliers") or any other party representing or acting on behalf of any Supplier; (iii) no Supplier, and no party representing or acting on behalf of any Supplier, is an agent or affiliate of Lessor or otherwise authorized to bind Lessor to any representation, warranty or agreement; and (iv) Lessor disclaims (and shall have no liability with respect to) any and all warranties made by Suppliers and any third parties, including, but not limited to, (A) any warranties against interference by Suppliers or any third parties with Lessee's use and enjoyment of the Equipment, and (B) any warranties that the Equipment is delivered free of any claim of any Suppliers and any third parties for patent, copyright or trademark infringement or the like. If Lessee, for any reason, does not accept any Item or fails to deliver an Acceptance Certificate with respect to all Items after either (x) Lessor has delivered a purchase order to the Supplier for such Items, or (y) Lessee has assigned a purchase order to Lessor, then Lessee shall pay to Lessor, upon demand and without prejudice to any other right of Lessor, the amount of any indebtedness incurred, or any sums paid, by Lessor toward the purchase of such Items, including but not limited to all of Lessor's out-of-pocket expenses, plus a service fee equal to ten percent (10%) of all such obligations incurred or paid by Lessor.

(b)        All Equipment shall be shipped directly from the Supplier to Lessee at Lessee's sole risk. Lessor shall have no obligation to deliver or install any Item, and Lessee shall be solely responsible for all site preparation and delivery and for the inspection and acceptance of each Item. After delivery of each Item to Lessee, and prior to placing such Item in service, Lessee shall inspect each such Item. If it conforms to the contract under which the Item was purchased from the Supplier or purchase order therefor (the "Supply Contract") and is in good working order, then Lessee shall execute and deliver to Lessor an Acceptance Certificate evidencing that such Item has been inspected on behalf of Lessee and Lessor on the Commencement Date, whereupon such Item shall be deemed to have been delivered to and accepted by Lessee and shall be subject thereafter to all the terms and conditions of this Lease. Lessee agrees to inspect all Equipment promptly after its delivery and to accept all Equipment meeting the

 

requirements of this Section III, acting reasonably and in good faith. Notwithstanding the foregoing or Lessee's execution of any Acceptance Certificate, any acceptance of Equipment hereunder will be for purposes of this Lease only and will be without prejudice to any rights that Lessor or Lessee may have against any manufacturer, Supplier, vendor, contractor, carrier, installer or any other person.  LESSEE AGREES THAT ITS EXECUTION OF AN ACCEPTANCE CERTIFICATE FOR ANY ITEM SHALL RENDER LESSEE'S OBLIGATIONS UNDER THIS LEASE NON-CANCELABLE, ABSOLUTE AND UNCONDITIONAL AS TO SUCH ITEM.

IV.      USE AND MAINTENANCE OF EQUIPMENT.

(a)      Lessee covenants and agrees that: (i) it will use the Equipment only for its originally-intended business purpose as described by Lessee to Lessor in requesting Lessor to enter into this Lease, and it will not use the Equipment for personal, family or household use; (ii) the Equipment will at all times be used, operated and maintained under and in compliance with (A) the laws of the jurisdiction(s) in which the Equipment is now or is hereafter located and operated, (B) all lawful acts, rules, regulations, license requirements and orders of any judicial, legislative or regulatory body having power to regulate or supervise the use, operation or maintenance of the Equipment, (C) all instructions, warranty provisions, or operating manuals prepared or released by the manufacturer or Supplier of such Equipment or any maintenance organization providing maintenance of such Equipment, and (D) all requirements of any insurance maintained hereunder; (iii) it will procure and maintain in effect all licenses, certificates, permits, registrations and other approvals and consents required by federal, state, county, municipal or foreign laws and regulations in connection with the transportation, ownership, possession, use, operation, performance, maintenance, storage, repair, reconstruction or return of the Equipment; (iv) the Equipment shall be operated only by employees or authorized agents of Lessee; (v) without Lessor's prior written consent, Lessee shall not move any item from the location specified in the Schedule for such item; (vi) it will not use the Equipment in farming operations without Lessor's prior written consent; and (vii) it will obtain and make available to all users of the Equipment all safety and operating manuals available from the manufacturer or Supplier of the Equipment.  Lessor covenants that during the Lease Term and so long as no Event of Default (as hereinafter defined) shall have occurred under any Lease (or an occurrence, act or failure to act, which, with the giving of notice or the passage of time, or both, may give rise to an Event of Default), Lessor shall not interrupt Lessee's peaceful and quiet enjoyment, possession and use of the Equipment.

(b)      Without in any way limiting the foregoing, Lessee further covenants and agrees to maintain the Equipment, at its sole cost and expense, in good and safe operating order, reasonable wear and tear excepted, and to make any alterations or modifications with respect to the Equipment required by any applicable law, governmental rule or regulation.  As used throughout this Lease, the term "reasonable wear and tear" shall mean the results of normal use of the Equipment as originally intended assuming: (i) use in accordance with the manufacturer's recommended standards; (ii) maintenance in accordance with all of the manufacturer's recommendations; (iii) the complete absence of any casualty, misuse, abuse, abandonment, improper care, accident, negligence or similar occurrence with respect to the Equipment, whether or not the Equipment is in use at the time of said occurrence; and (iv) use that does not, in any way, impair the function of the Equipment or prevent the Equipment from immediately being placed into use.  All replacement parts for the Equipment must be purchased from sources approved by the original manufacturer, according to manufacturer's specifications and consistent with the requirements of any and all warranties and service agreements.  Lessee shall keep copies of all purchase orders for replacement parts, all maintenance records and all other documents concerning the Equipment.  Lessee shall give copies of any or all of such records to Lessor (x) anytime Lessor requests the same in writing during the Lease Term, and (y) automatically upon any return of the Equipment with or without request by Lessor.

V.       TAXES.

(a)      Lessee shall indemnify and hold Lessor harmless from and against any and all license, title, recording and registration fees and any and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, fees and assessments now or hereafter imposed by any foreign, federal, state or local governmental body, agency, or any other taxing authority upon the Equipment or the purchase, ownership, delivery, leasing, possession, use or operation thereof or upon the rentals or receipts with respect to this Lease, together with any penalties, fines or interest thereon that are imposed against Lessor, Lessee, the Equipment, any items or any Lease (collectively, "Taxes"); provided, however, that Lessee shall have no liability hereunder for any taxes imposed by the United States of America or any state or political subdivision thereof that are on or measured by the net income of Lessor (as opposed to gross receipts).

(b)      Unless a Schedule provides otherwise: (i) Lessee shall report and pay immediately all Taxes and will on request of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes; and (if in case any report or return is required to be made with respect to any Taxes), Lessee will, to the extent legally permissible, make such report or return and, for that purpose, Lessor hereby appoints Lessee its agent and attorney-in-fact to make filings and/or payments on behalf of Lessor where the incidence thereof falls on Lessor.  Lessee will promptly deliver to Lessor a copy of all reports and returns filed by Lessee.  In the event any Taxes are paid by Lessor, or if Lessor is required to collect or pay any thereof, Lessee shall reimburse Lessor therefore promptly upon receiving written demand from Lessor in accordance with Section XX(e).

(c)      Lessee, at its sole cost, expense and exposure may contest in its own name the applicability of any Taxes covered by this Section V, provided that Lessee will give written notice to Lessor of any such contest and provided further that, in the opinion of Lessor: (i) Lessee is acting in good faith; (ii) no item will be thereby subjected to the lien of any taxing authority; and (iii) there is no danger of sale, forfeiture or loss of any or all of the Equipment or criminal liability.  Lessee may negotiate agreements for the abatement, relief or other adjustment of the Taxes covered hereby and shall upon request provide a copy thereof to Lessor.  Notwithstanding the foregoing, Lessor may release Lessee from its obligation to pay any Tax pursuant to this Section V, in which event Lessee shall not have any right to contest the imposition of such Tax and shall cooperate with Lessor in any contest or other proceeding maintained by Lessor regarding such Tax.

(Page 15 of 74)

 

VI.   INSPECTION AND REPORTS. Lessor (or any inspector designated by Lessor) may at any time enter upon the premises where any Item is kept or maintained for the purpose of confirming the existence, location, condition and proper maintenance and identification of such Item. However, the foregoing will not create any obligation on the part of Lessor to inspect any Item at any time. Lessor may, from time to time, inspect, examine, take extracts from and make copies of Lessee's books and records during normal business hours to the extent such books and records relate to the Equipment, Items, this Lease or any of Lessee's obligations hereunder. Lessee shall furnish to Lessor: (a) not later than one hundred twenty (120) days after the end of each fiscal year of Lessee, (i) CPA compiled financial statements (including a balance sheet and the related statements of income, cash flows and retained earnings) of Lessee, and (ii) unaudited financial statements for each person guaranteeing Lessee's obligations under this Lease, all such statements to be prepared in accordance with generally accepted accounting principles (or other comprehensive basis of accounting acceptable to Lessor) for such fiscal year, together with statements in comparative form for the preceding fiscal year, and accompanied by an opinion of certified public accountants acceptable to Lessor, which opinion shall state in effect that such financial statements were prepared in accordance with generally accepted accounting principles (or other comprehensive basis of accounting acceptable to Lessor, applied on a consistent basis); and (b) together with each submission of financial statements as required above, a certificate of an authorized representative of Lessee stating that, except as disclosed in such certificate, no Event of Default exists under this Lease or under any instrument evidencing or securing any other indebtedness or contingent liability of Lessee, and no event has occurred and is continuing which, with notice or lapse of time or both, would constitute an Event of Default under this Lease or under any instrument evidencing or securing any other indebtedness or contingent liability of Lessee. If any such Event of Default exists or any such event has occurred and is continuing, such certificate shall contain a description of the nature and extent thereof. In addition to the foregoing reporting requirements, Lessee shall promptly furnish to Lessor such other information regarding the financial condition or operations of Lessee as Lessor might reasonably request from time to time.

VII.   LOSS OF EQUIPMENT; DAMAGE TO EQUIPMENT.

(a)   Lessee shall bear the entire risk of loss as to each Item commencing upon the placement thereof in transit for shipment of such Item from the Supplier to Lessee and continuing until such Item is returned to and received by Lessor or its designee as provided herein. The risk of loss borne by Lessee hereunder will be for purposes of this Lease only and will not prejudice the rights of Lessee or Lessor against the Supplier, the carrier or any other person. If any Item is lost, stolen, requisitioned or seized by any government authority or rendered permanently unfit for use by any cause whatsoever, including destruction or irreparable damage (such occurrences being hereinafter called "Casualty Occurrences"), then Lessee shall promptly (and in any event within ten (10) days after the Casualty Occurrence) and fully notify Lessor in writing of all details with respect thereto. Lessee further agrees to notify Lessor immediately of any demand, notice, summons, complaint or legal proceeding relating to any Casualty Occurrence.

(b)   On the rent payment date next following a Casualty Occurrence (the "Payment Date"), Lessee shall pay in cash to Lessor the sum of (i) all rent or other amounts that are due hereunder as of the Payment Date; and (ii) a Stipulated Loss Value (as hereinafter defined) calculated as of the Payment Date. As used herein, the "Stipulated Loss Value" of each Item as of any Payment Date shall be that percentage of Lessor's Cost of such Item set forth in the Stipulated Loss Value Table attached to or defined in the applicable Schedule. Notwithstanding the foregoing, if the Casualty Occurrence occurs before the first rental payment due, then the "Stipulated Loss Value" of such Item shall be the Stipulated Loss Value for the Commencement Date. In addition to payment of the Stipulated Loss Value of each Item, Lessee shall also pay any costs and expenses (including attorneys' fees) incurred in connection with Lessor's enforcement of its rights and interests hereunder.

(c)   Upon the payment of the Stipulated Loss Value with respect to any Item and any other amounts due and payable to Lessor hereunder, Lessee's rental obligations hereunder for such Item shall terminate and Lessor shall transfer to Lessee or Lessee's insurer, without recourse or warranty, all of Lessor's right, title and interest, if any, in and to such Item (or, if applicable, release any lien in favor of Lessor). Thereafter, Lessee shall be responsible for the sale or other disposition of such Item. Any proceeds other than insurance proceeds (including proceeds of condemnation or requisition) received by Lessor or Lessee as the result of a Casualty Occurrence with respect to any Item shall be applied at Lessor's option, in whole or in part, to (i) repair or replace such Item or any part therefore, or (ii) satisfy any obligation of Lessee to Lessor hereunder or under any Schedule.

(d)   In the event that any Item has been damaged, but Lessee believes the damage is not irrepairable, Lessee shall promptly (and in any event within ten (10) days after the damage) give Lessor written notice and details of any such damage and its plans to repair the same. Lessee further agrees to notify Lessor immediately of any demand, notice, summons, complaint or legal proceeding relating to the accident or occurrence causing said damage. If, in Lessor's judgment, the damage is not irreparable, Lessee shall place the same in good working order, repair and condition, reasonable wear and tear excepted, in lieu of the payment specified in subsections (a) and (b) above, and Lessee shall thereafter confirm to Lessor on a reasonable basis consistent with the extent of the damage, that such repair plans have been carried forward diligently and completed. Lessee's rental and other obligations hereunder shall continue at all times with respect to such Items (before, during and after repair).

VIII.   INSURANCE.

(a)   Lessee shall, at its own expense, commencing with the delivery of any Item to Lessee's premises and continuing until such Item has been returned to and received by Lessor or its designee as provided herein or Lessee has performed all of its obligations under this Lease, keep the Equipment insured for such amounts and against such hazards as Lessor may from time to time require, including: (i) special form replacement cost insurance for damage to the Equipment, which insurance amount shall not be less than the greater of the Stipulated Loss Value or the full replacement value of each Item; (ii) commercial general liability insurance insuring against liability for property damage, death and bodily injury resulting from the transportation, ownership, possession, use, operation, performance, maintenance, storage, repair, reconstruction or return of the Equipment, which insurance as to an Item leased under any Schedule shall not be less than $1,000,000 per occurrence (or such other amount as Lessor may



determine and include in the applicable Schedule or of which Lessor otherwise notifies Lessee in writing thereafter); and (iii) if reasonably requested by Lessor, other or additional coverage, including motor vehicle coverage. Lessee shall at all times carry workers' compensation insurance to the extent required by law. Each comprehensive physical loss or damage insurance policy shall also provide that any proceeds payable by said insurer with respect to any loss or destruction of, or damage to, any Item, shall be payable solely to Lessor.

(b)     All such policies shall be with companies and on terms satisfactory from time to time to Lessor and all insurance policies shall: (i) name Lessor as loss payee and additional insured; (ii) provide that the policies will not be invalidated as against Lessor because of any violation of a condition or warranty of the policy or the application therefore by Lessee; (iii) provide that the policies may be materially altered or canceled by the insurer only after at least thirty (30) days prior written notice to Lessor and to any and all assignees of Lessor; and (iv) at Lessor's request, provide for a lender's loss payable endorsement (438 BFU or its equivalent) in Lessor's favor and any other endorsements which Lessor may require from time to time. Without limiting the foregoing, Lessee agrees to inform Lessor immediately in writing of any notices from, or other communications with, any insurers that may in any way negatively affect the insurance policies maintained pursuant to this Section VIII.

(c)     Lessee agrees to deliver to Lessor evidence of compliance with this Section VIII satisfactory to Lessor, including any requested copies of policies, certificates and endorsements, with premium receipt therefor, on or before the date of execution by Lessee of the applicable Schedule and thereafter within seven (7) days after Lessor's request. No insurance shall be subject to any co-insurance clause. All deductibles and retentions, if any, shall be subject to Lessor's approval. All insurance premiums shall be prepaid by the Lessee. Lessee hereby appoints Lessor as Lessee's attorney-in-fact with respect to claims relating to this Lease or the Equipment under policies of insurance maintained in accordance with the terms hereof: (i) to make proof of loss and claim for insurance; (ii) to negotiate and settle such claims; (iii) to receive payment thereof; (iv) to execute or endorse all documents, checks or drafts in connection therewith; and (v) to take any and all other actions with respect to such insurance. All expenses of Lessor in adjusting or collecting insurance shall be borne by Lessee. Lessor may, at its option, apply the proceeds of any insurance required by this Section VIII, in whole or in part, to repair or replace the Equipment or any portion thereof, or to satisfy any obligation of Lessee to Lessor hereunder.

IX.     RETURN OF EQUIPMENT.

(a)     Upon the earliest to occur of (i) the termination of this Lease following the occurrence of an Event of Default, (ii) the expiration of the Lease Term as to each Item (unless Lessee purchases such Item pursuant to the Schedule therefor), or (iii) any other termination of this Lease as to any Item, Lessee shall, at its own cost and expense and at the end of the storage period required by subsection (b) of this Section IX, if any: (A) place such Item in the same condition as when received by Lessee in accordance with the return and maintenance provisions of Section IV; (B) properly prepare such Item for shipment as further provided in subsection (b) of this Section IX; and (C) deliver such Item to any carrier designated by Lessor for shipment to any location which Lessor shall direct, with all freight costs and insurance charges prepaid by Lessee. Anything herein to the contrary notwithstanding, no Item will be deemed returned hereunder until received by Lessor or its designee in the condition required by this Section IX.

(b)     If requested by Lessor, Lessee, at its sole cost and expense, shall take any or all of the actions described in this Section IX(b), subject to the provisions expressly stated in the applicable Schedule: (i) arrange for inspection of each Item being returned hereunder by an appraiser, servicing organization or manufacturer's representative satisfactory to Lessor to assure compliance with the terms of this Section IX; (ii) provide for additional de-installation, packing, transporting and certification of the Equipment, including the following: (A) de-installation (including all wire, cable and mounting hardware, if any) in accordance with that of the manufacturers' specifications; (B) certification of each Item by the manufacturers' representative or servicing organizations indicating such Item is eligible for such manufacturers' or organizations' regular maintenance plans (which certification shall be transferable to another operator of such Item); (C) proper packing in accordance with all of the Equipment manufacturers' recommendations; and (D) transportation consistent with the all of the Equipment manufacturers' recommendations and practices; and/or (iii) store such Item at Lessee's premises or another site selected by Lessor for one hundred eighty (180) days or such shorter period as Lessor shall request, subject in any event to Lessor's right to terminate such storage on reasonable notice. During any storage pursuant to this Section IX(b): (1) Lessee shall provide all insurance required hereunder; (2) such Item shall be kept in a safe and secure environment; (3) Lessee shall provide access to such Item to Lessor, its designated inspectors or any prospective purchaser or new lessee during normal business hours; (4) Lessee shall make no use or operation of such Item without Lessor's prior written consent; and (5) at the end of such storage period, Lessee shall comply with Section IX(a).

X.     NEGATIVE COVENANTS OF LESSEE. Without Lessor's prior written consent, Lessee shall not: (a) sell, assign, sublease or otherwise transfer any Item or any of its interest in or rights under this Lease or as to any Item; (b) permit the assignment or transfer of any of the Equipment or its interest in or rights under this Lease by operation of law; (c) change Lessee's legal name, state of organization, organizational structure (by merger or otherwise) or organizational identification number; (d) attempt or purport to mortgage, pledge, grant a security interest in or otherwise permit, suffer or cause any lien, privilege, charge or encumbrance of any kind or nature whatsoever to exist or remain on any Item (except those in favor of Lessor as contemplated under this Lease); or (e) affix or install any Item to or in any real property or any other personal property.

XI.     FINANCIAL COVENANTS. Without limitation or restriction of any other term or provision set forth in this Lease, Lessee shall perform, observe, and comply with, and shall cause each subsidiary, parent or affiliate of Lessee to perform, observe, and comply with, any covenant or agreement contained in any present or future mortgage, indenture, loan or credit agreement, or other contract or agreement with RBC Bank (USA) or to any of its affiliates (a "Bank Agreement") pertaining to the financial condition or performance of Lessee or any subsidiary, parent or affiliate of Lessee (whether or not on a consolidated basis), as any such covenant or agreement might be amended, modified or restated from time to time pursuant to the terms of the Related Agreement (collectively, the "Financial Covenants"). Borrower agrees that the Financial Covenants are and will be incorporated by reference




into this Lease to the same extent as if the Financial Covenants were fully stated herein. The Financial Covenants will survive the termination, release, or expiration of the Bank Agreement for any reason and will remain in full force and effect for purposes of this Lease, without amendment. If requested by Lessor but not as a predicate to the effectiveness of the foregoing provisions, Lessee shall execute and deliver to Lessor, such documentation as Lessor may request to evidence the incorporation of the Financial Covenants into this Lease and the survival and continuation of the Financial Covenants following the termination or expiration of the Bank Agreement.

XII.     EVENTS OF DEFAULT.  An event of default ("Event of Default") shall be deemed to have occurred hereunder if: (a) Lessee fails to pay any rent or other amount payable hereunder when due; (b) Lessee fails to return any item to Lessor in accordance with Section IV and Section IX of this Lease; (c) Lessee fails to maintain insurance in accordance with Section VIII of this Lease; (d) Lessee breaches any of the covenants contained in Section X of this Lease or any of the Financial Covenants; (e) any representation or warranty made by Lessee hereunder or in any other present or future agreement with or writing furnished to Lessor proves to be false in any material respect when made; (f) Lessee breaches any warranty, term, condition or covenant hereunder, under any Schedule, under any other present or future agreement between Lessor (or an affiliate of Lessor) and Lessee relating to this Lease (including any progress payment agreement entered into in connection with this Lease) or under any lease or mortgage affecting the real property where any Item is located; (g) Lessee, or any subsidiary, parent, or affiliate of Lessee, defaults in the payment or performance of (i) any indebtedness or obligation under any present or future loan, lease, contract or agreement with Lessor or any affiliate of Lessor or (ii) any indebtedness or obligation under any present or future loan, lease, contract or agreement with any other person or entity in an amount of $50,000 or more; (h) Lessee: (i) becomes insolvent, (ii) dissolves or ceases to do business as a going concern, (iii) makes an offer of settlement, extension or composition to its unsecured creditors generally, (iv) makes an assignment for the benefit of its creditors, or (v) files a petition for an order for relief under Title 11 of the United States Code or any similar federal or state law, or has such a petition filed against it which is not dismissed within sixty (60) days; (i) the property of Lessee is attached or a trustee, receiver or other custodian is appointed for Lessee or for any if Lessee's real or personal property or Lessee defaults under any agreement for money borrowed or lease of real or personal property; (j) Lessee attempts to repudiate this Lease or revoke acceptance of any item; (k) Lessee, or any other party acting on Lessee's behalf, files, communicates or records, or attempts to file, communicate or record, a termination statement under Article 9 of the Uniform Commercial Code ("UCC") with respect to the Equipment or any Item without the prior written consent of Lessor; (l) any Item is abused, illegally used or misused; (m) there occurs any material adverse change in the financial condition of Lessee after the date hereof; (n) Lessee: (i) is a party to a merger, consolidation or transfer of substantially all of its assets, (ii) suffers a significant change in its senior management, or (iii) sells or otherwise transfers any facility in which the Equipment shall be located; (o) more than fifty percent (50%) of the equity in Lessee is transferred by sale, gift, devise, corporate reorganization or otherwise; (p) Lessee dies or becomes legally incompetent or a general partner or a managing member of Lessee dies, or becomes legally incompetent, or suffers an event described in clauses (e), (f), (g) or (h) of this Section XII; or (q) Lessor in good faith deems itself insecure hereunder. An Event of Default shall also be deemed to occur hereunder: (A) if any guarantor of Lessee's obligations hereunder (each, a "Guarantor") shall make any false representation or breach any covenant, condition or agreement of a guaranty executed by a Guarantor for Lessor's benefit (a "Guaranty"), in any other present or future agreement with or writing furnished to Lessor or an affiliate of Lessor, or under any lease or mortgage affecting the real property where any Item is located; (B) if any Guarantor attempts to repudiate, revoke, rescind, withdraw or cancel a Guaranty; (C) if any Guarantor suffers any condition or commits any act which, if suffered or committed by Lessee, would constitute an Event of Default under this Lease; or (D) if any of the events described above in clauses (e) or (f) occur with respect to any past, present or future agreement between Lessee and any corporation, partnership, limited liability company or other business entity employed or contracted by Lessor to provide services in connection with the Lease.  Lessee acknowledges that an Event of Default under any Lease shall constitute an Event of Default under all Leases.

XIII.    RIGHTS AND REMEDIES UPON DEFAULT. Upon the occurrence of an Event of Default, Lessee shall, without further demand, pay to Lessor, as liquidated damages for the loss of the bargain hereunder and not as a penalty, an amount equal to all outstanding rent payments then due and other sums then due hereunder, together with the Stipulated Loss Value of the Equipment, calculated as of the date Lessor declared a default hereunder, together with interest thereon at eighteen percent (18%) per annum or the highest rate allowed by law, whichever is lower.  At the request of Lessor, Lessee shall return the Equipment (or, if so requested, any Items designated by Lessor) to Lessor pursuant to the provisions of Section IX hereof, after an Event of Default. Lessor may, but shall not be required to: (i) repossess, disable or accept return of the Equipment or any Items on full or partial satisfaction of Lessee's obligations to Lessor with respect to the Lease; (ii) sell the Equipment or such Items at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment or such Items present at the place of sale; or (iii) lease, otherwise dispose of, disable or keep idle all or part of the Equipment or such Items.  Lessor may use Lessee's premises for any or all of the foregoing without liability for rent, costs, damages or otherwise.  With respect to any exercise by Lessor of its right to recover or dispose of the Equipment or any Items, Lessee acknowledges and agrees that: (A) Lessor shall have no obligation, subject to the requirements of commercial reasonableness, to clean-up or otherwise prepare the Equipment or any Items for disposition; and (B) Lessor may comply with any state or federal law requirements that Lessor deems to be applicable or prudent to follow in connection with any disposition of the Equipment or any Items, and any actions taken in connection therewith shall not be deemed to have adversely affected the commercial reasonableness of any such disposition. The proceeds of sale (or, at Lessor's election, the present value of the non-cancelable, regularly scheduled rentals receivable pursuant to a subsequent lease by Lessor of the Equipment or such Items, discounted at a rate to the implicit rate of this Lease, as of the date of such subsequent lease), if any, shall be applied in the following order of priorities: (1) first, to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of the Equipment, including attorneys' fees and expenses; (2) next, to the extent not previously paid by Lessee, to pay Lessor the Stipulated Loss Value thereof and all other sums, including any unpaid rent and any indemnification obligations then remaining unpaid hereunder, (3) next, to any secured parties granted rights to such proceeds pursuant to Article 9 of the UCC; (4) next, to reimburse Lessee for any sums previously paid by Lessee as liquidated damages; and (5) finally, any surplus shall be retained by Lessor, unless Lessee shall have rights to the surplus as provided under Article 9 of the UCC, in which case such surplus will be paid to Lessee.  In any event, Lessee shall pay any deficiency in (1) and (2) upon demand of Lessor.  The foregoing remedies may be exercised by Lessor with respect to any and

 

all Leases. To the extent permitted by applicable law, such remedies are cumulative and any or all of the foregoing remedies may be exercised in lieu of, or in addition to, each other or any remedies at law, in equity, or under applicable statute. To the extent permitted by applicable law, Lessee waives demand of performance and notice of sale or other disposition. If, after an Event of Default, this Lease is placed in the hands of an attorney, collection agent or other professional for collection of unpaid rent or enforcement of any other right or remedy of Lessor, Lessee shall pay all attorneys' or other fees and associated costs and expenses (including those of any in-house counsel utilized by Lessor in Lessor's discretion and including any attorneys' fees and expenses incurred in connection with any modifications to the Lease, the review or preparation of any notices, the curing of any Event of Default or any advisement of Lessor's rights hereunder). Forbearance as to any Event of Default shall not be deemed a waiver. All waivers shall be enforceable only if specifically provided in writing by Lessor, and a waiver of any Event of Default shall not be a waiver of any other or subsequent Event of Default.

XIV.   NET LEASE; NO SET-OFF, ETC. This Lease is a net lease, and LESSEE'S OBLIGATION TO PAY RENT AND OTHER AMOUNTS DUE HEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL under any and all circumstances, shall not be subject to cancellation, termination, modification or repudiation by Lessee, shall be paid and performed by Lessee without any abatement, reduction, setoff, defense, counterclaim or recoupment whatsoever, including any past, present or future claims that Lessee may have against Lessor or any manufacturer, Supplier, or vendor of any items, or any other person or entity whatsoever, and shall not be affected by reason of: (i) any damage to or the destruction or loss of all or any portion of the Equipment from whatever cause; (ii) the loss or theft of all or any portion of the Equipment; (iii) the taking of all or any portion of the Equipment or the land on or over which the Equipment is situated or building within which it is operated by condemnation, confiscation, requisition, eminent domain or otherwise; (iv) the prohibition, limitation or restriction of Lessee's use of all or any portion of the Equipment or the land on, or over, which the Equipment is situated or operated, or the interference with such use by any private person or corporation or any eviction by paramount title or otherwise; (v) the inadequacy or incorrectness of any description of all or any portion of the Equipment; (vi) any Event of Default by Lessor under this Lease or under any other agreement or instrument; or (vii) the termination or loss of any right or interest that Lessee may have in real or personal property upon which all or any portion of the Equipment is located, or to which it is attached or appurtenant, in connection with which such Equipment is used or that otherwise affects or may affect Lessee's right to use such Equipment; whether or not any of the foregoing shall be within the control of Lessee, or for any other cause, whether similar or dissimilar to the foregoing, any present or (to the extent permitted by applicable law) future law to the contrary notwithstanding, it being the intention of the parties hereto that the obligations of Lessee shall be separate and independent covenants and agreements and shall continue unaffected unless all covenants have been terminated pursuant to an express provision of this Lease. Rental payments and other amounts due hereunder shall continue to be payable in all events in the manner and at the times set forth herein unless this Lease shall have been terminated pursuant to the express terms hereof. It is intended that Lessee shall pay all costs, expenses and Taxes of every character, whether foreseen or unforeseen, ordinary or extraordinary, structural or nonstructural, in connection with the transportation, ownership, possession, use, operation, performance, maintenance, storage, repair and reconstruction of the Equipment, including the costs, expenses and Taxes and similar levies particularly referred to in this Lease. THIS LEASE CANNOT BE CANCELED OR TERMINATED BY LESSEE EXCEPT AS EXPRESSLY PROVIDED HEREIN.

XV.   INDEMNIFICATION. Lessee hereby agrees to defend, indemnify and hold Lessor (and at Lessor's option, Lessor's employees, agents, directors, partners, shareholders, officers, members and any assignee or secured party), harmless from and against: (a) all claims, demands, suits and legal proceedings (whether civil, criminal, administrative, investigative or otherwise, including arbitration, mediation, bankruptcy and appeal and including any claims, demands suits and legal proceedings arising out of (i) the actual or alleged manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return or other disposition of the Equipment, (ii) patent, trademark or copyright infringement, or (iii) any alleged or actual default by Lessee) (collectively, "Actions"); and (b) any and all penalties, losses, liabilities (including the liability of Lessee or Lessor for negligence, tort and strict liability), damages, costs, court costs and any and all other expenses (including attorneys' fees and expenses, judgments and amounts paid in settlement), incurred incident to, arising out of or in a any way connected with any Actions, any Lease, any Items, or any instrument, document or agreement executed in connection with or contemplated by any of the foregoing. The term "attorneys' fees" as used in this Lease shall include any and all attorneys' fees and expenses incurred by Lessor (whether by its use of in-house counsel or otherwise) incident to, arising out of or in any way connected with Lessor's interests in or defense of any Action or Lessor's enforcement of its rights and interests with respect to any Equipment, under any Lease or under any other instrument, document or agreement executed in connection with or contemplated by any of the foregoing (which shall include attorneys' fees incurred by Lessor to collect sums due, during any work-out, with respect to settlement negotiations, to enforce any of its rights to defend Lessor and which, in any bankruptcy proceeding, shall include any and all attorneys' fees incurred in connection with any motion for relief from the automatic stay and any motion to assume or reject any lease, it being the intention of the parties that any and all attorneys' fees incurred by Lessor in connection with any bankruptcy proceeding shall constitute "actual pecuniary losses" under §365 of the Bankruptcy Code and that Lessee shall be responsible for indemnifying Lessor with respect to such fees). Lessee shall, at Lessor's option, appear and defend any Action and pay the cost of the defense of any Action brought against Lessor, either alone or in conjunction with others, court costs and any such liability or claim. Lessee shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessor in any Action. The foregoing indemnities are continuing indemnities and shall survive expiration, termination or cancellation of this Agreement whether by expiration of time, by operation of law or otherwise.

XVI.   DISCLAIMER; WAIVERS.

(a)   LESSOR DOES NOT MAKE ANY, AND HEREBY DISCLAIMS ANY AND ALL, WARRANTIES OF MERCHANTABILITY OR FITNESS OF THE EQUIPMENT OR ANY COMPONENT OR ITEM THEREOF FOR ANY PARTICULAR PURPOSE. LESSOR DOES NOT MAKE, HAS NOT MADE, SHALL NOT BE DEEMED TO MAKE, AND HEREBY DISCLAIMS ANY SPECIFICATIONS, OPERATION OR CONDITION OF THE EQUIPMENT OR ANY COMPONENT OR ITEM THEREOF, OR AS TO TITLE TO THE EQUIPMENT OR ANY COMPONENT OR ITEM THEREOF, OR ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT OR ANY COMPONENT OR ITEM THEREOF

 

(EITHER UPON DELIVERY THEREOF TO LESSOR OR OTHERWISE), IT BEING AGREED THAT ALL SUCH RISKS, AS BETWEEN LESSOR AND LESSEE ARE TO BE BORNE EXCLUSIVELY BY LESSEE.  So long as Lessee is not in default hereunder, Lessor hereby appoints and constitutes Lessee as its agent and attorney-in-fact during the Lease Term to assert and enforce from time to time, in the name and for the account of Lessor, at Lessee's sole cost and expense, whatever claims and rights Lessor may have against any Supplier for breach of warranty. Lessor will have no liability to Lessee or any person whomsoever for any claim, loss, damage, or expense (including attorneys' fees) of any kind or nature, whether special, consequential, exemplary, punitive, economic, or otherwise, caused or alleged to be caused directly, indirectly, incidentally, or consequentially by (i) any inadequacy of any item or defect or deficiency therein, or by any other circumstance in connection therewith; (ii) by any incident whatsoever arising in strict liability or otherwise from Lessor's or Lessee's negligence or otherwise, (iii) the delivery, transportation, ownership, possession, use, operation, performance, servicing, maintenance, storage, repair, improvement, replacement, reconstruction or return of any Item or any risks relating thereto; or (iv) any interruption of service, or loss of business or anticipated profits.

(b)       To the fullest extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon "lessees" (as defined in the UCC) by Section 2A-508 through 2A-522 of the UCC as currently in force on the date hereof or otherwise conferred upon lessees by the UCC as subsequently revised or re-enacted.  To the fullest extent permitted by applicable law, Lessee also waives any rights now or hereafter conferred by statute or otherwise that may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages set forth in Section XV of this Lease or that may otherwise limit or modify any of Lessor's rights or remedies under said Section XV. Lessee expressly acknowledges that Section XV sets forth a reasonable amount or reasonable formula for calculation of liquidated damages in light of the anticipated harm caused by any Event of Default by Lessee hereunder.  Any action by Lessee against Lessor in connection with this Lease shall be commenced within one year after such cause of action arises or Lessee shall conclusively be deemed to have waived any and all rights to commence any such causes of action.

XVII.       REPRESENTATIONS AND WARRANTIES.  Lessee represents and warrants, and to the extent provided herein, covenants and agrees, that: (a) Lessee is duly organized, validly existing and in good standing under the laws of the state of its incorporation, organization or formation and is qualified to do business and in good standing under the laws of each state in which Lessee's use and maintenance of any Item would require such qualification; (b) Lessee is the type of entity stated in the preamble on page 1 of this Lease (the "Preamble"), is organized under the laws of the state listed in the Preamble and has the organizational identification number listed in the Preamble (if any); (c) the name of Lessee listed in the Preamble is the correct legal name of Lessee; (d) Lessee has full power and authority to execute, deliver and perform all its obligations under this Lease; (e) this Lease has been duly authorized by all necessary action of Lessee, duly executed on behalf of Lessee, and constitutes a valid and legally binding obligation of Lessee, enforceable in accordance with its terms; (f) the execution and performance by Lessee of this Lease and the validity hereof, do not require the consent or approval of, giving of notice to, registration with, or taking of any other action in respect of, any state, federal or other governmental authority or agency, any shareholders, partners, members, trustees or holders of any indebtedness of Lessee; or if any such consent, approval, notice, registration or action is required, it has been obtained, given or taken, and evidence thereof has been delivered to Lessor or will be delivered concurrently with the execution of this Lease; (g) the execution, delivery or performance by Lessee of its obligations under this Lease shall not contravene, in any material respect: (i) any law, (ii) any provision in Lessee's operating agreement, partnership agreement, charter, bylaw, or similar governing documents, instruments or agreements; (iii) any provision in any existing mortgage, indenture, loan or credit agreement or other contract or agreement binding on Lessee; or (iv) any judgment, decree, order, franchise or permit applicable to Lessee; (h) neither the execution and delivery of this Lease nor the fulfillment of, or compliance with, the terms and provisions hereof, will result in the creation of any lien, charge, security interest or other encumbrance upon all or any portion of the Equipment (other than under this Lease); (i) Lessee is not a party to any agreement or instrument, or subject to any charter, by-law, or other corporate or business restriction, materially and adversely affecting its business, properties, assets, operations or condition (financial or otherwise), and Lessee is not in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any agreement for borrowed money or other material agreement or instrument to which it is a party or by which it may be bound in any manner; (j) all balance sheets, profit and loss statements, statements of income or other financial statements of Lessee, heretofore delivered to Lessor, have been prepared in accordance with generally accepted accounting principles and fairly and accurately present the financial position of Lessee, on and as of the date thereof and the results of its operations for the period or periods covered thereby, and since the date of such balance sheets, profit and loss statements of income or other financial statements, there has been no material adverse change in the financial condition of Lessee; (k) Lessee is not in default under this Lease; (l) Lessee is, and will continue through the period of effectiveness of this Lease to be, either the owner, the lessee or the sublessee of each and every facility in which any Item shall be located; (m) Lessee shall notify Lessor in writing within five (5) days after any tax, materialmen's or other lien shall attach to any Item, and any such notice shall specify the location of such Item on the date of such notification, the amount and circumstances of any claim giving rise to such lien and the identity and address of the lienholder; (n) Lessee, and to the best of Lessee's knowledge after having made diligent inquiry, each person owning an interest in Lessee, and each Guarantor:  (i) is not currently identified on the OFAC List (as hereinafter defined), and (ii) is not a person with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, regulation, or Executive Order of the President of the United States.  Lessee has implemented procedures, and will consistently apply those procedures throughout the Lease Term, to ensure the foregoing representations and warranties remain true and correct during the Lease Term.  As used herein, "OFAC List" means the list of specially designated nationals and blocked persons subject to financial sanctions that is maintained by the U.S. Treasury Department, Office of Foreign Assets Control and any other similar list maintained by the U.S. Treasury Department, Office of Foreign Assets Control pursuant to any requirements of law, including trade embargo, economic sanctions, or other prohibitions imposed by Executive Order of the President of the United States.  The OFAC List currently is accessible through the internet website www.treas.gov/ofac/t11sdn.pdf; and (o) Lessee shall comply with all requirements of law relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect.

XVIII.       FURTHER ASSURANCES; POWER OF ATTORNEY.  Lessee, upon demand of Lessor and at Lessee's sole cost and



expense, will do and perform any other act and will execute, acknowledge, deliver, file, register, communicate, record and deposit any and all further documents, instruments, writings or records required by law or requested by Lessor to protect Lessor's rights and interest hereunder in any jurisdiction that Lessor deems appropriate, including: (a) financing statements, applications for certificates of title or other records under the UCC or other applicable law as currently in force or as subsequently revised, enacted or re-enacted; and (b) the delivery of duly executed landlord's or mortgagee's waivers from any person claiming an interest in any real property or improvements on, or in, which any Item is located. Lessee further authorized Lessor, and any corporation, partnership, limited liability company or other business entity employed or contracted by Lessor to provide services in connection with this Lease (a "Service Provider"), and irrevocably appoints Lessor and any such Service Provider as its attorney-in-fact (coupled with an interest) to enter the Commencement Date and any other information that does not materially change the terms of this Lease and any Schedule or other writing executed in connection with the lease of any Item, to execute applications for certificates of title or notice of lien relating to any Item, to file financing statements or to execute and deliver or otherwise authenticate and communicate any writing or record and take any other actions that Lessor reasonably deems necessary or desirable to protect Lessor's interest under this Lease. Any date or other such information inserted by Lessor shall be conclusively presumed to be correct and authorized hereby. Lessor shall use its reasonable best efforts, without any effect on its rights hereunder, to notify Lessee promptly after the insertion of any such date or other information, and Lessee shall immediately notify Lessor in writing if it alleges that any such insertion is incorrect or not authorized hereby for any reason. Lessee further authorizes Lessor and any Service Provider to transmit and file any such statements, ministerial changes and other items by electronic means.

XIX.     ASSIGNMENT OF PURCHASE ORDERS AND RELATED DOCUMENTS. Lessee does hereby assign and set over to Lessor all of Lessee's right, title and interest in, to and under any Supply Contract and any purchase orders, warranty agreements and other instruments and documents that relate to the acquisition of Equipment (the "Purchase Documents"), including an assignment of: (a) the right to purchase each and every Item pursuant to the applicable Purchase Documents, the right to take title to such Items, and the right to be named as the purchaser in the bill of sale for such Items; (b) all claims for damages arising as a result of any default by the Supplier or other parties obligated pursuant to the Purchase Documents, including all claims under all warranty and indemnity provisions contained in any such Purchase Documents; and (c) any and all rights of Lessee to compel performance of the terms of such Purchase Documents. Notwithstanding anything to the contrary contained herein: (i) Lessor shall have no liability under any Purchase Document, shall not be obligated to perform any of the obligations or duties of Lessee under any Purchase Document, shall not be obligated to make any payment (other than under the terms and conditions set forth in the Lease), and shall not be obligated to make any inquiry as to the sufficiency of, or authorization for any payment received by any Supplier or other person under any Purchase Document or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder; (ii) the exercise by Lessor of any of the rights assigned hereunder shall not release Lessee from any of its duties or obligations under the Purchase Documents to the Supplier or other parties; and (iii) Lessee shall have no right to bind Lessor to any change in any Purchase Document, any delivery schedule or any other agreement whatsoever.

XX.     MISCELLANEOUS.

        (a)     All representations, warranties and agreements made herein by any of the parties hereto shall survive consummation of the transactions contemplated hereby. Lessee's obligations as to events or conditions occurring during the Lease Term shall survive termination, cancellation or expiration of this Lease as to any Item. Any cancellation or termination by Lessor of this Lease shall not release Lessee from: (i) any then outstanding obligations owed to Lessor hereunder; or (ii) any obligation that arises at any time with respect to events occurring or conditions existing during the Lease Term (including any and all of Lessee's obligations under Section V and Section XV of this Lease), which obligations shall continue in full force and effect notwithstanding such expiration, cancellation or other termination, and are expressly made for the benefit of, and shall be enforceable by, Lessor. Lessor's failure at any time to require strict performance by Lessee with any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith.

        (b)     Any notice or other communication required or desired to be given shall be in writing and shall be sent by certified mail (return receipt requested), by a nationally recognized express courier service (such as FedEx®) or personally served. Each such notice to Lessee shall be deemed to be duly given (i) when mailed upon deposit in any depository maintained by the United States Postal Service, (ii) when deposited with a nationally recognized express courier service or (iii) when personally served. Any notice to Lessor shall be deemed to be duly given upon actual receipt by Lessor. Each such notice shall be addressed to the parties at the addresses set forth on page 1 hereof until any Schedule is executed, and, thereafter, at the address specified in such Schedule, if different, or to any other address as may be specified by a party by a notice given as provided herein. NOTWITHSTANDING THE FOREGOING, ANY NOTICE, REQUEST OR DEMAND MADE BY LESSEE PURSUANT TO ANY STATUTORY RIGHTS GRANTED LESSEE UNDER THE UCC (AS CURRENTLY IN FORCE OR AS SUBSEQUENTLY REVISED OR RE-ENACTED) SHALL ONLY BE EFFECTIVE UPON RECEIPT OF A COPY OF SAID NOTICE, REQUEST OR DEMAND BY LESSOR AT THE ADDRESS SET FORTH ABOVE WITH THE FOLLOWING CAPTION "ATTN: MANAGING DIRECTOR, LEASING & EQUIPMENT FINANCE."

        (c)     As additional security for Lessee's obligations under each Schedule, Lessee grants to Lessor a security interest in: (i) any and all Deposit Accounts (as defined by the UCC) maintained at, or Certificates of Deposit (as defined by the UCC) maintained with or issued by, RBC Bank (USA), or any of its affiliates (whether such certificates constitute Deposit Accounts or Instruments as defined in the UCC); and (ii) all other collateral as to which a security interest has been or is hereafter granted by Lessee to RBC Bank (USA) or to any of its affiliates in connection with any mortgage, indenture, loan or credit agreement, or other contract or agreement for money borrowed or the real or personal property (a "Bank Agreement"). Anything herein to the contrary notwithstanding: (A) the security interests granted pursuant to clauses (i) and (ii) of this Section XIX(c) shall be solely for the benefit of any direct or indirect subsidiary or other affiliate of RBC Bank (USA) and any security interest created under clause (ii) of this Section XIX(c) shall expire upon termination of the relevant Bank Agreement.

 

(d)     LESSOR MAY ASSIGN THIS LEASE AND ANY AND ALL SCHEDULES HERETO, AS WELL AS ALL OF ITS RIGHT, TITLE AND INTEREST HEREUNDER, TO ANY PERSON OR ENTITY WHATSOEVER WITHOUT NOTICE TO OR CONSENT OF LESSEE. In such event, Lessor's assignee shall have all of the rights, but none of the obligations, of Lessor hereunder, and Lessee agrees that it will not assert against any assignee of Lessor any defense, counterclaim or offset that Lessee may have against Lessor with respect to this Lease or any other matter. Lessee acknowledges that any assignment or transfer by Lessor, in whole or in part, shall not materially change Lessee's duties or obligations under this Lease nor materially increase the burdens or risks imposed on Lessee. ONLY LESSOR'S ORIGINAL COUNTERPART OF EACH SCHEDULE CONSTITUTES CHATTEL PAPER FOR PURPOSES OF THE UCC, AND NO SECURITY INTEREST CAN BE PERFECTED BY POSSESSION OF ANY OTHER COUNTERPART, WHETHER OR NOT SIGNED BY THE PARTIES.

(e)     If Lessee shall fail to provide any insurance, remove any lien, pay any Tax, provide any indemnity, or otherwise perform any obligation hereunder that may be performed or satisfied by the payment of money, Lessor may, in addition to and without waiver of any other right or remedy herein provided, pay such sum for Lessee's account. In such event, Lessee shall reimburse Lessor immediately upon demand for all such sums, together with interest at one and one-half percent (1.5%) per month or the highest rate allowable under applicable law, whichever is lower. Lessee acknowledges that any default described in this paragraph is a monetary Event of Default under this Lease.

(f)     Time is of the essence of this Lease. The provisions of this Lease shall be severable and if any provision shall be invalid, void or unenforceable in whole or in part for any reason, the remaining provisions shall remain in full force and effect. This Lease shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns (subject nevertheless to restrictions against assignment provided in Section X).

(g)     Upon written request, Lessor will furnish to Lessee a copy of this Lease in 12-point type.

(h)     It is the intention of the parties hereto that the Equipment shall consist solely of personal property, and that the same shall not constitute fixtures. The parties acknowledge and agree that the Equipment is and shall remain removable from, and not essential to, the premises where the Equipment is located. Any use of the term "Equipment" herein shall be deemed to refer equally to all items and each item, it being the understanding of the parties that any reference to "Equipment" shall not be deemed to prejudice any right of Lessor hereunder to require performance as to each item, and any reference to "item" shall not be deemed to prejudice any right of Lessor to require performance as to all of the Equipment. Nothing herein shall be deemed to provide or imply that Lessor is a "merchant" as to any item within the meaning of the UCC as currently in force or as subsequently revised or re-enacted. The terms "herein" or "hereunder" or like terms, shall be deemed to refer to this Lease as a whole and not to a particular section. Whenever terms such as "include" or "including" are used in this Lease, they shall mean "include" or "including", as the case may be, without limiting the generality of any description or word preceding such term. Whenever the expression "satisfactory to Lessor", "in Lessor's judgment" or similar words are used, or Lessor is granted the contractual or right to choose between alternatives or to express its opinion, the satisfaction, judgment, choices and opinions are to be made in Lessor's sole discretion. The captions or headings in this Lease are made for convenience and general reference only and shall not be construed to describe, define or limit the scope or intent of the provisions of this Lease. As used herein, all masculine pronouns shall include the feminine or neuter, and all singular terms the plural form thereof, and vice versa. The exhibits annexed hereto are incorporated herein by this reference and made a part hereof as if contained in the body of this Lease. All references to sections hereunder shall be deemed to refer to sections of this Lease, unless otherwise expressly provided, whether or not "hereof", "above", "below" or like words are used. This Lease has been drafted by counsel for Lessor as a convenience to the parties only and shall not, by reason of such action, be construed against Lessor or any other party. Lessee acknowledges and agrees that it has had full opportunity to review this Lease and has had access to counsel of its choice to the extent it deems necessary in order to interpret the legal effect hereof. Lessee agrees that Lessor may request and review credit reports regarding Lessee and any guarantor, affiliate or owner of any interest in Lessee. This Lease may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

(i)     This Lease shall not become effective until accepted by Lessor in Birmingham, Alabama, and, when so accepted by Lessor, shall be governed in all respects by, and construed and enforced in accordance with, the laws of the State of Alabama, excluding conflicts-of-law principles. EACH OF LESSEE AND LESSOR HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING UNDER THIS LEASE OR REGARDING THE EQUIPMENT. For purposes of any action or proceeding involving this Lease, each party hereby expressly submits to the jurisdiction and venue of all federal and state courts located in the State of Alabama, Jefferson County, and consent to be served with any process on paper by registered mail or by personal service within or without said state and county in accordance with applicable law, provided a reasonable time for appearance is allowed. Each party hereby waives, to the fullest extent it may effectively do so, the defense of any inconvenient forum to the maintenance of any such action or proceeding. Nothing in this paragraph shall affect the right of any party to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding in the courts of any other jurisdiction.

(j)     Federal law requires all financial institutions to obtain, verify and record information regarding customers. Lessor has or will obtain and will keep on file information complying with 31 CFR Part 103.121 regarding Lessee, including Lessee's name, address and copies of various identifying documents.

(k)     (i) The Lessee represents to the Lessor that its business and affairs constitute substantial interstate commerce and that it contemplates using the Equipment in substantial interstate commerce. Except as otherwise specifically set forth below, any action, dispute, claim, counterclaim or controversy ("Dispute" or "Disputes"), between or among the Lessor, the Lessee or any Guarantor or other obligor, including any claim based on or arising from an alleged tort, shall be resolved by arbitration as set forth below. As used herein, Disputes shall include all actions, disputes, claims, counterclaims or controversies arising in connection with the Lease, any extension of or commitment to extend credit by the Lessor, any collection of any rental or other indebtedness owed

 

to the Lessor, any security or collateral given to the Lessor, any action taken (or any omission to take any action) in connection with any of the foregoing, any past, present and future agreement between or among the Lessor, the Lessee, any Guarantor or any other obligor, and any past, present or future transactions between or among the Lessor, the Lessee, any Guarantor or obligor. Nothing in this Section shall prevent the Lessor from declaring the existence of an Event of Default as provided for in Section XII or from pursuing any or all of its remedies under Section XIII.

(ii)     All Disputes shall be resolved by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association (the "AAA"). Defenses based on statutes of limitation, estoppel, waiver, laches and similar doctrines, that would otherwise be applicable to an action brought by a party, shall be applicable in any such arbitration proceeding, and the commencement of an arbitration proceeding with respect to this Agreement shall be deemed the commencement of an action for such purposes.

(iii)     Notwithstanding the foregoing, the Lessee and each Guarantor and other obligor agrees that the Lessor shall have the option, but not the obligation, to submit to and pursue in a court of law any claim against the Lessee, the Guarantor or any obligor for a debt due. The Lessee, the Guarantor and each obligor agrees that, if the Lessor pursues such a claim in a court of law, (A) failure of the Lessor to assert any additional claim in such proceeding shall not be deemed a waiver of, or estoppel to pursue, such claim as a claim or counterclaim in arbitration as set forth above, and (B) the institution or maintenance of a judicial action hereunder shall not constitute a waiver of the right of any party to submit any other action, dispute, claim or controversy as described above, even though arising out of the same transaction or occurrence, to binding arbitration as set forth herein. If the Lessee asserts a claim against the Lessor in arbitration or otherwise during the pendency of a claim brought by the Lessor in a court of law, the court action shall be stayed and the parties shall submit to arbitration all claims.

(iv)     No provision of, nor the exercise of any rights under this Section, shall limit the right of any party (A) to exercise self-help remedies such as set-off, or (B) to obtain provisional or ancillary remedies such as injunctive relief, attachment or the appointment of a receiver from a court having jurisdiction before, during or after the pendency of any arbitration or referral. The institution and maintenance of an action for judicial relief or pursuit of provisional or ancillary remedies or exercise of self-help remedies shall not constitute a waiver of the right of any party, including the plaintiff in such an action, to submit the Dispute to arbitration or, in the case of actions on a debt, to judicial resolution.

(v)     Whenever arbitration is required hereunder, the arbitrator shall be selected in accordance with the Commercial Arbitration Rules of the AAA. The AAA shall designate a panel of ten (10) potential arbitrators knowledgeable in the subject matter of the Dispute. Each of the Lessor and the Lessee shall designate, within thirty (30) days of the receipt of the list of potential arbitrators, one of the potential arbitrators to serve, and the two arbitrators so designated shall select a third arbitrator from the eight remaining potential arbitrators. The panel of three arbitrators shall determine the resolution of the Dispute.

(l)     Notwithstanding anything to the contrary in this Lease, if the "Lessee" consists of more than one person or entity, the obligations and liabilities of each such person or entity under this Lease are joint and several. Lessee acknowledges and agrees that each such person or entity comprising Lessee has received sufficient and adequate consideration in exchange for incurring the obligations and liabilities set forth in this Lease.

(m)     This Lease and exhibits hereto constitute the entire agreement of the parties with respect to the subject matter hereof. Any Schedule to this Lease may, by its express terms, supplement or amend this Lease to, among other things, add additional Events of Default or covenants. Unless otherwise specifically agreed in writing, any such supplement or amendment shall be deemed applicable to this Lease and each and every Lease, whether or not such Schedule is subsequently terminated or satisfied and irrespective of the date of its execution. The terms of any letter of intent or proposal are superseded hereby and declared null and void. NO VARIATION OR MODIFICATION OF THIS LEASE OR ANY TERM OR PROVISION HEREOF OR WAIVER, DISCHARGE, CANCELLATION OR TERMINATION OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN A WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTY AGAINST WHOM THE ENFORCEMENT OF SUCH VARIATION, MODIFICATION, WAIVER, DISCHARGE, CANCELLATION OR TERMINATION IS SOUGHT.

American Ambulette & Ambulance Service, Inc. ("Lessee")

By: _____

Printed Name: _____MICHAEL FRANKL_____

Title: _____DIRECTOR_____

Accepted in Birmingham, Alabama, this the _19th_ day of _May_, 2011.

RBC Bank (USA) ("Lessor")

By: _____

Printed Name: Patricia T. Reid

Title: Managing Director

(Page 1 of 31)

EXHIBIT
B

# OHIO CERTIFICATE OF TITLE

ISSUING CNTY CUYAHOGA
RESIDENT CNTY MONTGOMERY  **STATE OF OHIO**  No.  18 0926 2790
REPLACEMENT

ISSUE DATE
06/10/2011

| IDENTIFICATION NUMBER | YEAR | MAKE | MAKE DESCRIPTION |
|---|---|---|---|
| 1FTNE1EW7BDA40890 | 2011 | FORD | FORD |

| COMMENTS | PURCHASE PRICE | BODY TYPE | MODEL | MODEL DESCRIPTION |
|---|---|---|---|---|
| LIEN REPLACEMENT | $24,513.00 | VN | 15V | ECONOLINE VAN E |

| TAX | MILEAGE | EVIDENCE |
|---|---|---|
| $1,715.91 | 10 | OH 1809169699 |

CONVERSION
MFG BRAND  ACTUAL

BRAND(S)

OWNER
AMERICAN AMBULETTE AND AMBULANCE SERVICE

2107 JERGEN S ROAD
DAYTON, OH 45404

LICENSE EXPIRES

TRANSFER ISSUED

TRUCK WT

PREVIOUS OWNER
VALLEY FORD TRUCK INC

5715 CANAL RD
VALLEY VIEW, OH 44125-0000

18498793    ND003325

FIRST LIENHOLDER    DATE OF LIEN  06/10/2011
RBC BANK [USA]

1927 1ST AVENUE NORTH P.O. BOX 428
BIRMINGHAM, AL 35201

LIEN DISCHARGE                          LIEN DISCHARGE

Lienholder _____              Lienholder _____

by _____                      by _____
   Authorized signature   date          Authorized signature   date
CLERK OF COURTS LIEN CANCELLATION    CLERK OF COURTS LIEN CANCELLATION
by _____                      by _____
   Deputy Clerk   date                  Deputy Clerk   date

WITNESS MY HAND AND OFFICIAL SEAL THIS 10th DAY OF JUNE, 2011
7.105179454                          (SEAL)

*%105179454*
%105179454

GERALD E. FUERST
CLERK OF COURTS
G

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

BMV 3800 Rev. 5/04

Rec. 7/19/11

EXHIBIT

C

# OHIO CERTIFICATE OF TITLE

ISSUING CNTY  CUYAHOGA
RESIDENT CNTY  MONTGOMERY  **STATE OF OHIO**    No.    18 0926 2789
REPLACEMENT
ISSUE DATE
06/10/2011

IDENTIFICATION NUMBER                      YEAR    MAKE    MAKE DESCRIPTION
**1FTNE1EW2BDA42868**         2011  FORD  FORD
COMMENTS                PURCHASE PRICE    BODY TYPE  MODEL  MODEL DESCRIPTION
LIEN REPLACEMENT.      $24,534.00     VN     15V    ECONOLINE VAN E

CONVERSION          TAX                MILEAGE        EVIDENCE
$1,717.38       10        OH 1809169698
MLG BRAND  ACTUAL

BRAND(S)

OWNER
AMERICAN AMBULETTE AND AMBULANCE SERVICE

2107  JERGEN S ROAD
DAYTON, OH 45404

PREVIOUS OWNER
VALLEY FORD TRUCK INC

5715 CANAL RD
VALLEY VIEW, OH 44125-0000             18498793    ND003325

FIRST LIENHOLDER        DATE OF LIEN    06/10/2011
RBC BANK [USA]

1927 1ST AVENUE NORTH P.O. BOX 428
BIRMINGHAM, AL 35201

LIEN DISCHARGE                      LIEN DISCHARGE
Lienholder                          Lienholder

by:                                 by:
    Authorized signature      date      Authorized signature      date
CLERK OF COURTS LIEN CANCELLATION   CLERK OF COURTS LIEN CANCELLATION
by:                                 by:
    Deputy Clerk             date        Deputy Clerk             date

WITNESS MY HAND AND OFFICIAL SEAL THIS 10th DAY OF JUNE,2011
7.105179453
(SEAL)

Gerald E. Fuerst

GERALD E. FUERST
CLERK OF COURTS

%105179453                                              G

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

BMV 3800 Rev. 5/04



EXHIBIT

D

# OHIO CERTIFICATE OF TITLE

ISSUING CNTY COYAHOGA
RESIDENT CNTY MONTGOMERY **STATE OF OHIO** No. 18 0925 3008

ORIGINAL

ISSUE DATE
06/02/2011

| IDENTIFICATION NUMBER | | YEAR | MAKE | MAKE DESCRIPTION |
| 1FTNE1EW4BDA42869 | | 2011 | FORD | FORD |

| COMMENTS | | BODY TYPE | MODEL | MODEL DESCRIPTION |
| | PURCHASE PRICE $24,534.00 | VN | 15V | E150 |
| | TAX $1,717.38 | MILEAGE 10 | EVIDENCE OH MCO - IN STATE |
| CONVERSION | MLG BRAND ACTUAL | | |

BRAND(S)
OWNER
AMERICAN AMBULETTE AND AMBULANCE SERVICE

2107 JERGENS RD
DAYTON, OH 45404

LICENSE EXPIRES
TRANSFER ISSUED
TRUCK WT

PREVIOUS OWNER
VALLEY FORD TRUCK INC

5715 CANAL RD
VALLEY VIEW, OH 44125-0000                            18498793     ND003325

FIRST LIENHOLDER        DATE OF LIEN    06/02/2011
RBC BANK

1927 1ST AVE NORTH
BIRMINGHAM, AL 35201

LIEN DISCHARGE                              LIEN DISCHARGE

Lienholder_____                    Lienholder_____

by:_____                           by:_____
   Authorized signature        date           Authorized signature        date
CLERK OF COURTS LIEN CANCELLATION          CLERK OF COURTS LIEN CANCELLATION
by:_____                           by:_____
   Deputy Clerk            date               Deputy Clerk            date

WITNESS MY HAND AND OFFICIAL SEAL THIS 2nd DAY OF JUNE, 2011
7.105171508
                                                      (SEAL)

*%105171508*
%105171508

GERALD E. FUERST
CLERK OF COURTS                    G

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**

BMV J800 Rev. 5/04

rev. 7/19/u

EXHIBIT
E

## OHIO CERTIFICATE OF TITLE

ISSUING CNTY CUYAHOGA
RESIDENT CNTY MONTGOMERY

**STATE OF OHIO    No.    18 0925 3009**

ORIGINAL

ISSUE DATE 06/02/2011

IDENTIFICATION NUMBER
**1FTNE1EW7BDA53977**

COMMENTS

YEAR 2011   MAKE FORD   MAKE DESCRIPTION FORD

PURCHASE PRICE $24,534.00

BODY TYPE VN   MODEL 15V   MODEL DESCRIPTION ECONOLINE VAN

CONVERSION

TAX $1,717.38   MILEAGE 10   EVIDENCE OH MCO - IN STATE

MLG BRAND ACTUAL

BRAND(S)

OWNER
AMERICAN AMBULETTE AND AMBULANCE SERVICE

2107 JERGENS RD
DAYTON, OH 45404

PREVIOUS OWNER
VALLEY FORD TRUCK INC

5715 CANAL RD
VALLEY VIEW, OH 44125-0000

ACREAGE EXP REF

TRANSFER fee

TRUCK Ut

18498793   ND083325

FIRST LIENHOLDER   DATE OF LIEN   06/02/2011
RBC BANK

1927 1ST AVE NORTH
BIRMINGHAM, AL 35201

LIEN DISCHARGE
Lienholder _____

by _____   Authorized signature   date

CLERK OF COURTS LIEN CANCELLATION

by _____   Deputy Clerk   date

LIEN DISCHARGE
Lienholder _____

by _____   Authorized signature   date

CLERK OF COURTS LIEN CANCELLATION

by _____   Deputy Clerk   date

WITNESS MY HAND AND OFFICIAL SEAL THIS 2nd DAY OF JUNE, 2011

% 105171509

(SEAL)

*Gerald E. Fuerst*

GERALD E. FUERST
CLERK OF COURTS

*%105171509*

%105171509

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

BMV 3800 Rev. 5/04