**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

------------------------------------------------------------X

In re:                                                        Case No. 13-07673-8-SWH

AMERICAN AMBULETTE &
AMBULANCE SERVICE, INC.                          Chapter 7
D/B/A MEDCORP, D/B/A
LIFE AMBULANCE

                    Debtor(s).
------------------------------------------------------------X

**Motion for Relief From the Automatic Stay, Payment of Adequate Protection,
Finding that Only Advantage Funding Has a Security Interest in Certain Motor
Vehicles, and Waiving the Fourteen (14) Day Stay of Bankruptcy Rule 4001(a)(3)**

Now Comes Advantage Funding Commercial Capital Corp. (hereinafter "Advantage Funding"), upon the affidavit of Christopher L. Brown ("Brown Affidavit"), a copy of which is annexed hereto as **Exhibit "A"**, through its counsel, pursuant to Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and §§ 362(d), 363, 502 and 105 of Title 11 of the United States Code ("Bankruptcy Code"), to (i) request relief from the automatic stay provided by § 362(a) of the Bankruptcy Code; to (ii) finding that Bankruptcy Rule 4001(a)(3) is not applicable to this matter; and (iiiv) granting such other and further relief as the Court may deem just and proper.

**Background**

1.      American Ambulette & Ambulance Service, Inc., d/b/a MedCorp, d/b/a Life Ambulance ("Debtor"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 11, 2013.

2.      Algernon L. Butler III was appointed the Chapter 7 Trustee.

3.     This Court has jurisdiction over the parties and the subject matter of this application pursuant to 28 U.S.C. §§151, 157 and 1334, and may render such orders and judgments as appropriate in a õcoreö proceeding pursuant to 11 U.S.C. §157.

4.     On or about April 3, 2009, the Debtor and Advantage Funding entered into an Equipment Financing Agreement (õAgreement 1ö) for the purchase of one (1) 2009 Ford E150 motor vehicle, VIN # 1FTNE14W49DA50207 (õVehicle 1ö).  (Brown Affidavit Ex. A).

5.     The loan amount for Vehicle 1 was $35,355.50.

6.     Under the terms of Agreement 1, the Debtor is required to pay Advantage Funding $545.00 per month for a remaining period of sixty (60) months.

7.     In addition, under the terms of Agreement 1, Advantage Funding was granted a first priority lien against Vehicle 1.

8.     As further security for the loan, the Debtor signed a Cross Collateral and Cross Default Agreement with the Debtor. Copies of the loan documents pertaining to Vehicle 1 are annexed to the Brown Affidavit.

9.     On the same date, the Debtor and Advantage Funding entered into an Equipment Financing Agreement (õAgreement 2ö) for the purchase of one (1) 2009 Ford E150 motor vehicle, VIN # 1FTNE14W29DA50206 (õVehicle 2ö).  (Brown Affidavit Ex. D).

10.    The loan amount for Vehicle 2 was $26,235.50.

11.    Under the terms of the Agreement 2, the Debtor is required to pay Advantage Funding $545.00 per month for a remaining period of sixty (60) months.

12.    The remainder of the documentation for Vehicle 2 was the same as that for Vehicle 1. Copies of the loan documents for Vehicle 2 are annexed to the Brown Affidavit.

13.    The Debtor has not made any payments to Advantage Funding since November, 2013, two months ago.  Itemizations of the amounts past due for each vehicle are attached to the Brown Affidavit as Exhibits B and E.

14.    The balance due on each vehicle as of November 29, 2013 was as follows:

Vehicle 1        $ 3,820.95
Vehicle 2        $ 3,788.25
                 $ 7,609.20 plus interest

15.    The balance has increased by the passage of time while the value of the collateral has declined.  Advantage Funding believes the value of each vehicle is no more than $3,000. (Brown Affidavit ¶¶ 18, 19).

16.    The Debtor's bankruptcy estate does not have equity in the motor vehicles. (Brown Affidavit ¶ 21).

<u>Relief Requested</u>

17.    Advantage Funding respectfully requests that the Court enter an Order in accordance with § 362(d)(1) and (d)(2), among other things, modifying the automatic stay to allow it to take possession of its collateral.

18.    Section 362(d)(1) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay for cause, including the lack of adequate protection of the creditor's interest in the property.

19.    Sufficient cause exists to modify the automatic stay to allow Advantage Funding to take possession of its collateral, and proceed under applicable bankruptcy law.

20.    Section 363(d)(2) provides that the Bankruptcy Court shall grant relief from the automatic stay if the Debtor does not have equity in the property and the property is not necessary to an effective reorganization.

21.     For a property to be necessary for an effective reorganization, there must be a reasonable possibility for a successful reorganization within a reasonable time. <u>United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,</u> 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed 2d 740, 17 C.B.C. 2d 1368(1988).

22.     Since this case is a Chapter 7 liquidation, there is no chance of a reorganization.

23.     Furthermore, Advantage Funding requests that the Trustee provide adequate protection to Advantage Funding should he use Advantage Funding's collateral in the wind-down phase of the Chapter 7 proceeding.

24.     Advantage Funding requests that either it receive payment now, in cash, or a Chapter 7 administrative expense claim for wear and tear.

WHEREFORE, Advantage Funding respectfully prays to the Court as follows:

1.      That the automatic stay provided by § 362(a) of the Bankruptcy Code be modified and lifted to allow Advantage Funding to repossess and sell the two (2) motor vehicles pursuant to the terms of the loan documents and applicable non-bankruptcy law.

2.      That the Court enter an Order directing the Trustee to pay to Advantage Funding, either in cash at this time or by the granting of a Chapter 7 administrative expense claim, an amount to be determined as adequate protection for any use of the motor vehicles by the Debtor under the control of the Trustee.

3.      That Bankruptcy Rule 4001(a)(3) be modified such that it is not applicable with respect to the motion and that Advantage Funding be entitled to immediately enforce and implement any Order granting relief from that automatic stay with respect to the three motor vehicles.

4.      That Advantage Funding be allowed to file a claim for any deficiency arising out of the sale of the two motor vehicles.

5.      That Advantage Funding be granted such other and further relief as the Court deems necessary and appropriate.

Respectfully submitted this 28th day of January, 2014.

Pryor & Mandelup, L.L.P.
Attorneys for Advantage Funding
Commercial Capital Corp.


John H. Hall, Jr.
N.Y. State Bar No. 2284479
675 Old Country Road
Westbury, NY 11590
(516) 997-0999

- and ó

Tuggle-Duggins, P.A.
Attorneys for Advantage Funding
Commercial Capital Corp


/s/Martha R. Sacrinty
Martha R. Sacrinty
N.C. State Bar No. 32911
100 North Greene St., Suite 600
Greensboro, NC 27401
Phone:  (336) 378-1431
Fax:  (336) 274-6590

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

-------------------------------------------------------X

In re:                                                    Case No. 13-07673-8-SWH

AMERICAN AMBULETTE &
AMBULANCE SERVICE, INC.                    Chapter 7
D/B/A MEDCORP, D/B/A
LIFE AMBULANCE

            Debtor(s).
-------------------------------------------------------X

**NOTICE OF MOTION**

        Advantage Funding Commercial Capital Corp. has filed papers with the court to obtain relief from the automatic stay with respect to two vehicles belonging to the Debtor.

        Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

        If you do not want the court to grant relief from the stay, or if you want the court to consider your views on the motion, then on or before February 14, 2014, unless otherwise ordered, you or your attorney must file with the court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing at:

                        Clerk's Office
                        U.S. Bankruptcy Court
                        Eastern District of North Carolina
                        300 Fayetteville Street, 2nd Floor
                        Raleigh, NC 27601

        If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  The mailing address for the Clerk's Office is

                        Post Office Box 791
                        Raleigh, NC 27602

        You must also mail a copy to: Martha R. Sacrinty
                        Tuggle Duggins, P.A.
                        Post Office Box 2888
                        Greensboro, NC 27402

730503v1

and to the Debtor, Debtor attorney, Trustee, Bankruptcy Administrator, and other parties in interest.

If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the motion at a date, time and place to be later set and all parties will be notified accordingly.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

This the 28th day of January 2014.

/s/Martha R. Sacrinty
Martha R. Sacrinty
N.C. State Bar No. 32911
Attorney for Advantage Funding
Commercial Capital Corp.

OF COUNSEL:

TUGGLE DUGGINS, P.A.
100 N. Greene Street, Suite 600
Greensboro, NC 27401
(336)378-1431

730503v1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Motion for Relief From Stay and Notice of Motion were served upon the following through the Court's CM/ECF system or by depositing a copy in the United States mail, first class, postage prepaid, addressed as follows:

Ryan P. Ethridge
Alston & Bird LLP
4721 Emperor Blvd, Suite 400
Durham, NC 27703

Algernon L. Butler, III
Trustee
Butler & Butler, L.L.P.
Post Office Box 38
Wilmington, NC 28402

Oliver Carter, III
Carter & Carter, P.A.
408 Market Street
Wilmington, NC 28401

Henry L. Kitchin, Jr.
McGuire Woods LLP
Post Office Box 599
Wilmington, NC 28402

Christy L. Myatt
Nexsen Pruet, PLLC
Post Office Box 3463
Greensboro, NC 27402

Marjorie K. Lynch
Bankruptcy Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

This the 28th day of January, 2014.

/s/Martha R. Sacrinty
Martha R. Sacrinty

730503v1

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

-----------------------------------------------------------X

In re:                                          Case No. 13-07673-8-SWH

AMERICAN AMBULETTE &
AMBULANCE SERVICE, INC.                         Chapter 7
D/B/A MEDCORP, D/B/A
LIFE AMBULANCE

                        Debtor(s).
-----------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF
### MOTION TO MODIFY THE AUTOMATIC STAY

Christopher L. Brown, being duly sworn, deposes and says:

1.      I am the Asset Manager of Advantage Funding Commercial Capital Corp. ("Advantage Funding").

2.      I have over 20 years experience in the motor vehicle business.

3.      I am fully familiar with the facts of this case, and make this affidavit in support of Advantage Funding's motion seeking an Order modifying the automatic stay to take possession and control of, and to exercise its state court remedies with respect to one 2009 Ford E150 vehicle, VIN # 1FTNE14W49DA50207 (Motor Vehicle 1) and one 2009 Ford E150 vehicle, VIN # 1FTNE14W29DA50206 (Motor Vehicle 2) , and granting such other and further relief as the Court may deem just and proper.

### MOTOR VEHICLE 1

4.      On April 3, 2009, MedCorp Inc. ("Debtor") entered into a chattel mortgage ("Mortgage 1") with Advantage Funding to purchase Motor Vehicle 1 for a price of $35,355.50.

5.      To fund the purchase, Advantage Funding advanced the Debtor the amount of $26,235.50.

6.      Pursuant to the terms of Mortgage 1, the Debtor granted Advantage Funding a first priority security interest in Motor Vehicle 1.

7.      Under the terms of Mortgage 1, the loan matures on April 15, 2014.  A copy of Mortgage 1 and the title indicating that Advantage Funding has a first lien on Motor Vehicle 1 is annexed hereto as **Exhibit "A"**.

8.      The Debtor paid Advantage Funding until December 15, 2013.

9.      Presently, the Debtor is in default on its obligation for Motor Vehicle 1 in the amount of $3,820.95.  A copy of the latest statement is annexed hereto as **Exhibit "B"**.

10.     In addition, at the time of the transaction, the Debtor also signed a cross-collateral and cross-default agreement ("Agreement 1").  A copy of Agreement 1 is annexed hereto as **Exhibit "C"**.

## MOTOR VEHICLE 2

11.     On the same day, the Debtor entered into a chattel mortgage ("Mortgage 2") for Motor Vehicle 2.

12.     The purchase price for Motor Vehicle 2 was $35,338.50 and the loan amount was $26,235.50.

13.     The form of Mortgage 2 is the same as that of Mortgage 1.  Advantage Funding, pursuant to Mortgage 2 was granted a first lien on Motor Vehicle 2.  A copy of Mortgage 2 and the motor vehicle title is annexed hereto as **Exhibit "D"**.

14.     As with Motor vehicle 1, the loan matures on April 15, 2014, and the Debtor has been past due since December 15, 2013.

15.     The balance due on Motor Vehicle 2 is $3,788.25.  A copy of the latest statement is annexed hereto as **Exhibit "E"**

16.     The Debtor also executed a cross-collateral and cross-default agreement with respect to Motor Vehicle 2 ("Agreement 2").  A copy of Agreement 2 is annexed hereto as **Exhibit "F"**.

## THE DEBTOR DOES NOT HAVE EQUITY IN
## EITHER MOTOR VEHICLE 1 OR MOTOR VEHICLE 2

17.     Advantage Funding does not have possession of either Motor Vehicle 1 or Motor Vehicle 2 at this time.

18.     However, based on my experience, I estimate that each vehicle should have

approximately 100,000 miles on it.

19.     Assuming they are of average condition, each vehicle should have a value of approximately $3,000.00.

20.     Since the vehicles are cross-collateralized, the total value of the debt is owed against each vehicle.

21.     The total amount owed is $7,609.20, and the estimated value is $ 6,000.00.

22.     Thus, the Debtor does not have equity in either Motor Vehicle 1 or Motor Vehicle 2.

_____
Christopher L. Brown

Sworn to before me this
 ᵍ day of January, 2014

_____
Notary Public

MICHAEL JOHN TANZI
Notary Public - State of New York
NO. 01TA6258825
Qualified in Suffolk County
My Commission Expires _____

# EXHIBIT A
# TO BROWN AFFIDAVIT

**CHATTEL MORTGAGE**

**(Equipment Financing Agreement)**

**CREDITOR:** **Advantage Funding Commercial Capital Corp.**

1111 Marcus Avenue, Suite M27

Lake Success, NY 11042

**OBLIGOR:** MEDCORP, INC.

745 MEDCORP DRIVE

TOLEDO, OH 43608

**SELLER:** MOBILITY WORKS= PHILPOTT MOTORS LTD

| QUANTITY | DESCRIPTION OF EQUIPMENT: MODEL NO., SERIAL NO. OR OTHER IDENTIFICATION | PRICE $35,335.50 |
|---|---|---|
| 1 | 2009 FORD E150 4.6L B8 REGULAR LENGTH Serial Number - /FTNE14W49DA 5020) | TOTAL $35,335.50 |

ADDITIONAL PROVISIONS (IF ANY) AND/OR LOCATION OF EQUIPMENT OTHER THAN OBLIGOR'S ADDRESS ABOVE:

| TERMS AND CONDITIONS OF AGREEMENT | | | | |
|---|---|---|---|---|
| A. MONTHLY PAYMENT: | B. TERM OF AGREEMENT: 60 months | C. COMMENCEMENT DATE: | D. ADVANCE PAYMENTS : | E. ADVANCE PAYMENTS SHALL BE APPLIED TO : FIRST 0 & LAST 0 MONTHS |
| $545.00 | 60 Remaining | Date Signed | $9,795.00 | |

**AMOUNT OF ADVANCE:**     $26,235.50

1. The Obligor named above ("Obligor") hereby grants to the creditor named above ("Creditor") a first priority security interest in the personal property described above and in any schedule signed by the parties and made a part hereof, including all proceeds and products thereof, all proceeds of insurance thereon, all substitutions therefor and all additions thereto (said property, proceeds, products substitutions and additions being herein called "Equipment") , which Equipment Obligor confirms will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in paragraph 4 hereof (and including any amounts specified in any separate promissory note or instrument which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obligations pursuant to the terms and conditions of this Agreement.

2. Creditor agrees to advance to or on behalf of Obligor the above-stated Amount of Advance (herein called the "Advance") which Obligor agrees may be paid directly by Creditor to Seller in satisfaction of the total purchase price of the Equipment.

3. The term of this Agreement (the "Entire Term") shall be the number of months stated in B above, commencing on the date stated in C above. Obligor authorizes Creditor to insert such commencement date herein, provided that such date shall not be earlier than the date of delivery to Obligor of all or a substantial part of the Equipment.

4. Obligor's total payments for the Entire Term of this Agreement is equal to the monthly payment stated in A above, multiplied by the number of months stated in B above. Obligor agrees to pay the total payment in monthly installments, in advance, each in the amount stated in A above, commencing on the date stated in C above and continuing on the same day of each month thereafter. The "Advance Payments" stated in D above shall be paid by Obligor prior to Creditor's acceptance of this Agreement, and shall be applied to the periodic installments stated in E above. In the event the term of this Agreement does not commence for any reason whatsoever, the Advance Payments stated in D above shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement. Payment of all periodic installments and other amounts payable hereunder shall be made to Creditor at its above stated address, or as it shall otherwise designate in writing. **THIS AGREEMENT IS**



IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.

5. OBLIGOR REPRESENTS THAT IT HAS SELECTED THE EQUIPMENT, AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY. CREDITOR AND CREDITOR'S ASSIGNEE SHALL NOT BE LIABLE TO OBLIGOR OR ANY THIRD PARTY FOR ANY LOSS, DAMAGE, INJURY OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE EQUIPMENT OR THE USE OR MAINTENANCE THEREOF OR ANY DEFECT THEREIN, THE FAILURE OF OPERATION THEREOF, OR ANY REPAIR, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF OR BY ANY   INTERRUPTION OR SERVICE OR LOSS OF USE THEREOF OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED, INCLUDING (WITHOUT LIMITATION) ANY LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL CREDITOR BE LIABLE FOR ANY DAMAGES WHICH MAY BE ASSESSED AGAINST OBLIGOR IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES PATENT, TRADEMARK OR COPYRIGHT. CREDITOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT FOR TAX OR ACCOUNTING PURPOSES, OR AS TO THE COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENT REGULATIONS OR REQUIREMENTS, WHICH SHALL BE THE SOLE RESPONSIBILITY OF THE ABOVE-NAMED SELLER AND/OR MANUFACTURER OF THE EQUIPMENT. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY SELLER SHALL BE BINDING ON CREDITOR NOR SHALL THE BREACH OF SUCH RELIEVE OBLIGOR OF, OR IN ANY WAY AFFECT, ANY OF OBLIGOR'S OBLIGATIONS TO CREDITOR OR CREDITOR'S ASSIGNEE AS SET FORTH HEREIN. Obligor agrees to look solely to the manufacturer, the Seller named above or the carrier of the Equipment (which are solely responsible for supplying Obligor with all literature and manuals respecting the Equipment) for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, installation or inability to use the Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitations) Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

6. Obligor shall accept the Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Equipment so delivered. Unless Obligor gives Creditor and Seller written notice of each defect or other proper objection to any item of Equipment within five (5) days after delivery thereof, it shall be conclusively presumed that the Equipment was duly delivered and unconditionally accepted by Obligor. If Obligor wrongfully refuses delivery of any item of Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Equipment. Upon such payment, this Agreement shall terminate as to such item of Equipment only, and the periodic installment hereunder shall be proportionately adjusted.

7. Obligor shall keep the Equipment within the United States at the above-stated "Location of Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Equipment therefrom for more than thirty (30) days without Creditor's prior written consent.

8. Obligor shall use the Equipment in a careful manner and shall at all times, at its sole expense, keep the Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance. Obligor shall not make any alterations, additions, or improvements to the Equipment which are not readily removable without causing damage to or reducing the value of the Equipment. Obligor agrees to cause the Equipment to be maintained by the above-named Seller pursuant to Seller's standard preventive maintenance contract or by a comparable maintenance contract issued by a maintenance provider acceptable to Creditor.

9. Obligor agrees to title and register the Equipment with the appropriate Department of Motor Vehicles within 30 days of the date of this Agreement listing Creditor as first lienholder and having said title and/or proof of lien forwarded to Creditor. FAILURE TO PROVIDE SATISFACTORY PROOF OF TITLE AND REGISTRATION SHALL CONSTITUTE AN EVENT

2

INITIAL

OF **DEFAULT AND MAY RESULT IN THE REPOSSESSION OF THE COLLATERAL BY CREDITOR AND THE IMPOSITION OF PENALTIES AND FEES AT A RATE OF $25.00 PER DAY.** Creditor shall have the right during normal hours, upon reasonable prior notice to Obligor, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or to otherwise protect Creditor's interest.

10. The Equipment shall be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty. Obligor represents, warrants and covenants that, unless Obligor owns the premises in which the Equipment is to be located and such premises are not subject to any mortgage, Obligor shall provide Creditor, within ten (10) days following the execution by Obligor of this Agreement, with a waiver from each landlord and/or mortgagee of the premises in which the Equipment is to be located of any rights which such landlord and/or mortgagee may have in respect of any of the Equipment (including, but not limited to, claims against the Equipment by reason of accession or distraint, or that the Equipment constitutes a fixture affixed to real property) and to procure for Creditor, in form acceptable to Creditor, such documents with respect to such waiver as Creditor may reasonably request.

11.    In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

12. Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under paragraph 4 hereof or any other obligation hereunder because of any such occurrence. In the event of damage to any item of the Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor, shall (a) replace the same with like equipment in good condition and repair, or (b) pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such item of Equipment. Upon Creditor's receipt of such payment, Creditor's security interest in such item of Equipment shall cease.

13. Obligor shall, at its expense, keep the Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the greater of (a) the total periodic installments hereunder, or (b) the full replacement cost of the Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Creditor. Each policy shall provide that, as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, may apply any proceeds of such insurance to replace or repair such Equipment and/or to Obligor's obligations hereunder. If Obligor shall fail to provide any such insurance or, within ten (10) days after Creditor's request therefore, shall fail to deliver the policies or certificates thereof to Creditor, then Creditor, at its option, shall have the right to procure such insurance and to add the full cost thereof to the payment next becoming due, which Obligor agrees to pay. The amount of such insurance shall be sufficient so that neither Creditor nor Obligor will be considered a co-insurer. Obligor also shall carry public liability insurance, both personal injury and property damage covering the Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that losses, if any, shall be payable to Creditor and Creditor's assignee as "loss payee", and all such liability insurance shall include Creditor and Creditor's assignee as an "additional insured." Obligor shall pay the premiums for such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Creditor, that it will give Creditor at least ten (10) days prior written notice of the effective date of any alternation or cancellation of such policy, and that Creditor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy.
Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to make claim for, receive payments of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. In any event, Obligor shall be liable for any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Equipment or the use or operation of the Equipment.

14. Obligor covenants and agrees at all times to keep the Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase, possession or use of the Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If any

3

of same shall remain unpaid when due, Creditor may pay same and add such payment to the payment next becoming due. Obligor shall execute and deliver to Creditor upon Creditor's request such further instructions, financing statements and documents containing such other assurances as Creditor deems necessary or advisable for the confirmation or perfection of Creditor's rights hereunder or to otherwise effectuate the intent of this Agreement.

Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to execute, apply, amend, file, or take any reasonably necessary action to confirm or perfect Creditor's security interest in the equipment.

15.  Obligor shall and does hereby indemnify and save Creditor, its directors, officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage, repair, return or other disposition of the Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property.  The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and, at Creditor' sole option, shall defend Creditor against any Indemnified Claim at Obligor's sole expense with counsel selected by Creditor. Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Equipment so as to incur any liability or obligation for or on behalf of Creditor.

16.  OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT.  ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID. Creditor may, without notice, transfer or assign this Agreement or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to this Agreement and/or the Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and Obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest in this Agreement and, upon such assignment, Obligor agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise. Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to Creditor. Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice.  Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden or risk imposed on the Obligor under this Agreement.  Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would be deemed to materially affect the Obligor's interest.

17.  As used in this Agreement, the term "Event of Default" shall mean any one or more of the following: (an) the failure by Obligor to make any payment when due hereunder or the failure by a Debtor (as hereinafter defined) to pay when due any of the Liabilities (as hereinafter defined); (b) the failure by a Debtor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Debtor or otherwise relating to any of the Liabilities (collectively, the "Other Documents"), or (ii) any other obligation of a Debtor to Creditor; (c) any representation or warranty maded by or on behalf of any Debtor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made; (d) the making by a Debtor of any misrepresentation to Creditor or the failure on the part of a Debtor to disclose to Creditor any material fact in connection with this Agreement or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof; (e) the breach by a Debtor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor

4

INITIAL

hereunder; (f) any default in the payment of any indebtedness owed to any individual or entity other than Creditor, or any default in the performance or observance of the terms of any agreement, document or instrument pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof); (g) the failure of a Debtor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Equipment or any security for any of the Liabilities (including, without limitation, any premium on any insurance policy with respect to any of the Equipment or any security for any of the Liabilities, or any insurance policy assigned to Creditor as security for any of the Liabilities), or the making of any tax assessment against any Debtor by the United States or any state or local government; (h) the entry of a judgment against a Debtor or any attachment, levy or execution against any property of a Debtor, or the condemnation or seizure of any part of any property of a Debtor by any governmental authority or court at the insistence of such governmental authority; (i) the death of a Debtor, if an individual, or the death of any individual member of a Debtor, if a partnership or joint venture; (j) the change in control, management, ownership or operations of a Debtor, or the suspension of the usual business of a Debtor, or the dissolution, liquidation or other termination of existence of a Debtor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Debtor, or the sale of material assets of an Obligor; (k) the failure of a Debtor (or any admission in writing by a Debtor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Debtor; (l) the filing of an application for appointment of trustee, custodian or receiver for a Debtor or of any part of a Debtor's property, or an assignment for the benefit of creditors by a Debtor, or the making or sending of notice of any intended bulk transfer by a Debtor; (m) the filing of a petition in bankruptcy by or against a Debtor, or the commencement by or against a Debtor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or (n) such a change in the condition or affairs (financial or otherwise) of a Debtor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Equipment or any of the Liabilities or any security therefor. Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Entire Term (discounted to its present value at a discount rate of 6% as of the date of default) hereof shall be at once due and payable and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sell, lease, or otherwise dispose of the Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit, as Creditor many deem advisable, on at least ten (10) days' prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Equipment or any part thereof, crediting Obligor with the then reasonable rental value thereof for the balance of the Entire Term of this Agreement, and/or (iii) require Obligor to assemble all Equipment at Obligor's sole expense, for Creditor's benefit, at a place reasonably designated by Creditor: and/or (iv) pursue any other remedy granted by any existing or future document executed by Obligor or by law. Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of repossessing, storing, repairing and preparing Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted. The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and after payment of all expenses (which amount shall be retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Entire Term of the Agreement and any other amounts due hereunder, with Obligor to remain liable for any deficiency. Any amount due Creditor under this paragraph 17 shall be deemed liquidated damages for the breach hereof and not a penalty. All rights and remedies of Creditor shall be cumulative and not alternative and are in addition to any other remedies provided by law. Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on a future occasion.

    For purposes of this Agreement, (a) the term "Debtor" shall mean Obligor and any guarantor, pledgor or hypothecator, and any other party liable for any of the Liabilities of Obligor in addition to Obligor and the term "Liabilities" shall mean all liabilities and obligations of any kind of all Debtors (or any partnership, joint venture or other group of which any Debtor is a member) to Creditor whether (i) for the account of Creditor, or as agent for others, (ii) acquired directly or indirectly by Creditor from Obligor or otherwise, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortuous or now existing or hereinafter arising, or (iv) incurred by a Debtor as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses and attorneys' fees, incurred by Creditor in connection with any such liabilities or obligations or any security therefor.

5

INITIAL

18. Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payment's due date, Obligor agrees to pay Creditor, on demand, as liquidated damages and not as a penalty; (a) with respect to payments, an administrative fee equal to five cents ($.05) for each one dollar ($1.00) of such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever, is less, from the date such payment is due until the date such payment is made in full to Creditor. Such amount(s) shall be payable in addition to all amounts payable by Obligor as a result of exercise of any of the remedies herein provided. Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement.

19. Obligor agrees that this Agreement is irrevocable for the Entire Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment to operate properly, termination by operation of law or any other cause. Obligor further agrees that it shall have no right to prepay its obligations hereunder, in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law. Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Equipment from Seller. Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request. Obligor warrants (a) that this Agreement has been duly authorized, executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms, and (b) that no provision of this Agreement (i) is inconsistent with Obligor's charter, by-laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or (ii) conflicts with any applicable law, rule or regulation, and (c) that no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement. Obligor shall not change its name or its address without providing Creditor with at least thirty (30) days prior written notice thereof.

20. Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Equipment which may arise or become due during the term of this Agreement, whether or not specifically mentioned herein. No periodic installment or other sums payable by Obligor pursuant to this Agreement shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Equipment or any item thereof, any limitation, restriction, deprivation or prevention of, or any interference with Obligor's use of the Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Obligor from the Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

21. OBLIGOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH THIS AGREEMENT SHALL BE LITIGATED ONLY IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS OR SUCH OTHER FORUM AS CREDITOR SHALL ELECT. Obligor consents to the jurisdiction and venue of the foregoing courts and consents that any process or notice of motion or other application to either of such courts or a judge thereof may be served inside or outside the state of Creditor's principal place of business by registered or certified mail, return receipt requested, directed to Obligor at its address set forth in this Agreement (and service so made shall be deemed complete five (5) days after the same has been posted as aforesaid) or by personal service, or in such other manner as may be permissible under the rules of such courts. Obligor appoints each and every officer of Creditor as agent for the purpose of accepting service of any process within the state of Creditor's principal place of business, subject only to the condition that the officer promptly mail a copy of that process to Obligor at its address for notices hereunder.

22. EACH OF THE PARTIES HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OBLIGOR AND CREDITOR RELATING TO THE SUBJECT

6

INITIAL

MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OBLIGOR AND CREDITOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

23. Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other. Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Obligor is named herein the liability of each shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted. Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof. Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-509 of the UCC or otherwise, to file financing statements covering the Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. IN THE EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

24. THIS AGREEMENT SHALL BE CONSTRUED UNDER THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAW OR CHOICE OF LAW. This Agreement shall not become effective until accepted by Creditor at its above-described office, and upon such acceptance shall, subject to paragraph 16 hereof, inure to and bind the parties, their successors, legal representatives and assigns. No provision hereof that may be construed as unenforceable shall in any way invalidate any other provision hereof, all of which shall remain in full force and effect. All representations, warranties, indemnities and agreements of Obligor contained in this Agreement shall survive and continue in full force and effect notwithstanding termination or expiration of this Agreement.

No agent or employee of Seller is authorized to bind Creditor to this Agreement, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to Seller or any agent or employee of Seller. **THE UNDERSIGNED AGREE TO ALL TERMS AND CONDITIONS SET FORTH ABOVE AND IN WITNESS THEREOF HEREBY EXECUTE THIS AGREEMENT.**

CREDITOR:   Advantage Funding Commercial Capital Corp.

By: _____

Accepted at its office listed above: _____
Date

OBLIGOR:   MEDCORP, INC.

By: _____

Title: _____

7



## CERTIFICATE OF AUTHORITY FOR CHATTEL MORTGAGES

I certify to <u>Advantage Funding Commercial Capital Corp.</u> that the following resolutions were duly adopted by the Board of Directors of <u>MEDCORP, INC.</u> a Corporation existing under the laws of <u>Ohio</u> at a meeting duly held on _____ at which meeting a quorum was present and acting throughout, that the same have not been modified or rescinded and are not in conflict with any provision of the certificate of incorporation, by-laws or any agreement of said Corporation.

"RESOLVED, that the borrowing of this Corporation from <u>Advantage        Funding Commercial Capital Corp.</u> ("Creditor") of funds to finance the purchase of certain equipment which has been or will be purchased by this Corporation and the granting of a security interest to Creditor in such equipment is hereby approved, and any officer of this Corporation is authorized, in the name and on behalf of this Corporation to execute and deliver to Creditor a Chattel Mortgage covering such equipment, containing such terms and provisions as may be approved by the officer executing the same, his execution thereof to be deemed conclusive evidence of such approval, and any officer of this Corporation is also authorized, in the name and on behalf of this Corporation, to execute and deliver such other documents and to take such other action as may be deemed necessary or advisable to effectuate and perform such Chattel Mortgage."

I further certify that listed below are the officers of said Corporation, the respective offices held by them and specimens of their genuine signatures:

| Name | Title | Specimen Signature |
|------|-------|--------------------|
|      | C OO  | X _____ |
|      | Vice President | _____ |
|      | Treasurer | _____ |
|      | Secretary | _____ |

Signed and sealed this **27** day of **MARCH**, **2009**
(CORPORATE SEAL)

X _____
CEO

If the Secretary executing this Certificate is a signatory on any of the documents referred to above, another officer must countersign below to verify the authority of the Secretary to execute said documents on behalf of this corporation.

X _____
Officer's Countersignature

CEO
Title

X

Date of Chattel Mortgage: ___4/3/09___

Creditor:   Advantage Funding Commercial
Capital Corp.
1111 Marcus Avenue, Suite M27
Lake Success, NY 11042

## DELIVERY & ACCEPTANCE OF EQUIPMENT BY OBLIGOR

The undersigned Obligor acknowledges that the Equipment described in the Chattel Mortgage accepted by the above-named Creditor on the date indicated above has been received in good repair, has been properly installed, tested and inspected and is operating satisfactorily in all respects for all of Obligor's intended uses and purposes at the location(s) specified in the Chattel Mortgage.    OBLIGOR HEREBY ACCEPTS UNCONDITIONALLY AND IRREVOCABLY THE EQUIPMENT.

By signature below, Obligor specifically authorizes and requests Creditor and/or its Assignee to make payment to the seller of the Equipment.  Obligor agrees that said Equipment has not been delivered, installed or accepted on a trial basis.

WITH THE DELIVERY OF THIS DOCUMENT TO CREDITOR, OBLIGOR ACKNOWLEDGES AND AGREES THAT OBLIGOR'S OBLIGATIONS TO CREDITOR AND ITS ASSIGNEE BECOME ABSOLUTE AND IRREVOCABLE AND OBLIGOR SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT. OBLIGOR AFFIRMS THAT IT HAS NO DEFENSES OR COUNTERCLAIMS AGAINST CREDITOR AND IF THE CHATTEL MORTGAGE OR THE SCHEDULE IS ASSIGNED BY CREDITOR, OBLIGOR WILL NOT ASSERT AGAINST THE ASSIGNEE ANY DEFENSE, CLAIM, SETOFF OR COUNTERCLAIM WHICH OBLIGOR MAY HAVE AGAINST CREDITOR.

Date of Acceptance: _3/27/09_

Obligor:   MEDCORP, INC. _____
(Full name of individual, partnership or corporation)

The undersigned warrants that he is a duly authorized corporate officer, partner or manager of the above-named Obligor.

By: X_____
Name: _____ T Simon
Title: _CFO_

**IMPORTANT:  THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED ALL OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH IT.**

# EXHIBIT B
# TO BROWN AFFIDAVIT



# Advantage Funding
### Transportation Financing & Leasing Specialists

| DATE: | 12/16/2013 | 4029-01069 |
|---|---|---|
| ACCOUNT NAME: | American Ambulette & Ambulance Services Inc | |
| ACCOUNT SCHEDULE | BALANCE DUE SUMMARY | |

**A. PAST DUE MONTHLY RENTAL CHARGE BREAKDOWN:**

| | | | | |
|---|---|---|---|---|
| # Months past due: | 1 | Past Due From: | 12/15/2013 | |
| Next Payment Due Date: | 12/15/2013 | | | |

| | Monthly Unit Cost | | No. Months | Aggregate |
|---|---|---|---|---|
| 1) Equipment Rental: | $545.00 | X | 1 | $ 545.00 |
| 2) Tax on Equipment: | | X | | $ - |
| 3) Late Charge on Equipment Rental: | $32.70 | X | 11 | $ 359.70 |
| 4) Late Charge on Property Tax: | | X | | |
| | PAST DUE AGGREGATE | | | $ 904.70 |

**B. OTHER CHARGES PAST DUE:**

| | | |
|---|---|---|
| 1) Property Tax: | | $ - |
| 2) Sales Tax on Property Tax: | | |
| 3) Collection Charges (BOUNCE CHECK FEES) | | $ 191.25 |
| | TOTAL OTHER PAST DUE CHARGES | $ 191.25 |

**C. REMAINING AMOUNTS DUE:**

| | | |
|---|---|---|
| Months Remaining after Past due | 5 | |
| 1) Remaining Payments Equipment Rental Charges: | | $ 2,725.00 |
| 2) Remaining Payments Sales Tax: | | |
| 3) Residual: | | |
| 4) Guaranteed Purchase Option: | | $ - |
| 5) Repossession (Closeout Fee): | | $ - |
| 6) Commission Paid: | | |
| 7) Legal Fees to Date: | | $ - |
| 8) Transportation Fees: | | $ - |
| 9) Repair Fees: | | $ - |
| 10) Repossession Fees: | | $ - |
| 11) Miscellaneous | | |
| TOTAL REMAINING PAYMENTS/PETITION: | | $ - |
| | | $ 2,725.00 |

**D. TOTAL TRANSACTION TERMS:**

| | | Plan End | |
|---|---|---|---|
| Months | | Date: | 4/15/2014 |

**E. EQUIPMENT:**

| | | |
|---|---|---|
| 1. Gross Equipment Sale Proceeds: | | $ - |
| 2. Letter of credit cashed: | | $ - |
| | GRAND TOTAL DUE | **$3,820.95** |

GENERAL EQUIPMENT DESCRIPTION:

**2009 Ford E150**
**VIN: 1FTNE14W49DA50207**

# EXHIBIT C
# TO BROWN AFFIDAVIT



## ADVANTAGE FUNDING

### CROSS-COLLATERAL AND CROSS-DEFAULT AGREEMENT

TO:    MEDCORP, INC.
       745 MEDCORP DRIVE
       TOLEDO, OH 43608

To Whom It May Concern::

You have entered into or been assigned one or more real property mortgages, conditional sale contracts, lease agreements, chattel mortgages, security agreements, and/ or notes (herein designated " Accounts") covering real property, personal property, fixtures, equipment and/or inventory (herein designated "Collateral") and you and/or your assignor have made direct loans or leases to or otherwise extended credit to us evidenced by Accounts creating security interests in Collateral.

In order to induce you or to enter into the Accounts, in consideration of your so doing, and for other good and valuable consideration, the receipt of which we hereby acknowledge, we agree as follows:

All presently existing and hereafter acquired Collateral in which you have or shall have a security interest shall secure the payment and performance of all our liabilities and obligations to you of every kind and character, whether joint or several, direct or indirect, absolute or contingent, due or to become due, and whether under presently existing or hereafter created Accounts or agreements, or otherwise.

A default under any Account or agreement shall be deemed a default under all other Accounts and agreements. A default shall result if we fail to pay any sum when due pursuant to any Account or agreement, or if we or any Guarantor or other Obligor breach any of the other terms and conditions thereof, or if we or any Guarantor or other Obligor become insolvent, cease to do business as a going concern, make an assignment for the benefit of creditors, or if a petition for a receiver or in bankruptcy is filed by or against us, or if any of our or their property is seized, attached or levied upon. Upon any default any or all accounts and agreements, shall at your option, become immediately due and payable without notice or demand to us or any another party obligated thereon, and you shall have and may exercise any and all rights and remedies of a secured party under the Uniform Commercial Code as enacted in the applicable jurisdiction and as otherwise granted to you under any account or other agreement. We hereby waive, to the maximum extent permitted by law, notices of default, notices of repossession and sale or other disposition of Collateral, and all other notices, and in the event any such notice cannot be waived, we agree that if any such notice is mailed to us postage prepaid at the address shown below at least ten (10) days prior to the exercise by you or any of your rights or remedies, such notice shall be deemed to be reasonable and shall fully satisfy any requirement for giving notice.

All rights granted to you hereunder shall be cumulative and not alternative, shall be in addition to and shall in no manner impair or affect your rights and remedies under any existing Account, agreement, statute or rule of law.

We herewith expressly waive any rights we may have to termination of security interest or a satisfaction of mortgage on any paid in full Account so long as any Account covered by this agreement has not been satisfied in full.

This agreement may not be varied or altered nor its provisions waived except by your duly executed written agreement. This agreement is binding upon our heirs, administrators, executors, legal representatives, successors and assigns in favor of your successors and assigns.

MEDCORP, INC.
Obligor/Lessee

By: _____

Its: _____ CEO _____

Address: 745 medcorp a. Toledo oh 43608

# EXHIBIT D
## TO BROWN AFFIDAVIT

**CHATTEL MORTGAGE**

**(Equipment Financing Agreement)**

**CREDITOR:** **Advantage Funding Commercial Capital Corp.**

1111 Marcus Avenue, Suite M27

Lake Success, NY 11042

OBLIGOR:   MEDCORP, INC.

745 MEDCORP DRIVE

TOLEDO, OH 43608

SELLER:   MOBILITY WORKS= PHILPOTT MOTORS LTD

| QUANTITY | DESCRIPTION OF EQUIPMENT: MODEL NO., SERIAL NO. OR OTHER IDENTIFICATION | PRICE $35,335.50 |
|---|---|---|
| 1 | 2009 FORD E150 4.6 REGULAR LENGTH Serial Number - 1FTNE14W29DA50206  TOTAL  $35,335.50 | |

ADDITIONAL PROVISIONS (IF ANY) AND/OR LOCATION OF EQUIPMENT OTHER THAN OBLIGOR'S ADDRESS ABOVE:

| TERMS AND CONDITIONS OF AGREEMENT | | | | |
|---|---|---|---|---|
| A. MONTHLY PAYMENT: | B. TERM OF AGREEMENT: 60 months | C. COMMENCEMENT DATE: | D. ADVANCE PAYMENTS : | E. ADVANCE PAYMENTS SHALL BE APPLIED TO : FIRST 0 & LAST 0 |
| $545.00 | 60 Remaining | Date Signed | $9,100.00 | MONTHS |

**AMOUNT OF ADVANCE:**   $26,235.50

1.  The obligor named above ("Obligor") hereby grants to the creditor named above ("Creditor") a first priority security interest in the personal property described above and in any schedule signed by the parties and made a part hereof, including all proceeds and products thereof, all proceeds of insurance thereon, all substitutions therefor and all additions thereto (said property, proceeds, products substitutions and additions being herein called "Equipment") , which Equipment Obligor confirms will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in paragraph 4 hereof (and including any amounts specified in any separate promissory note or instrument which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obligations pursuant to the terms and conditions of this Agreement.

2.  Creditor agrees to advance to or on behalf of Obligor the above-stated Amount of Advance (herein called the "Advance") which Obligor agrees may be paid directly by Creditor to Seller in satisfaction of the total purchase price of the Equipment.

3.  The term of this Agreement (the "Entire Term") shall be the number of months stated in B above, commencing on the date stated in C above.  Obligor authorizes Creditor to insert such commencement date herein, provided that such date shall not be earlier than the date of delivery to Obligor of all or a substantial part of the Equipment.

4.  Obligor's total payments for the Entire Term of this Agreement is equal to the monthly payment stated in A above, multiplied by the number of months stated in B above.  Obligor agrees to pay the total payment in monthly installments, in advance, each in the amount stated in A above, commencing on the date stated in C above and continuing on the same day of each month thereafter.  The "Advance Payments" stated in D above shall be paid by Obligor prior to Creditor's acceptance of this Agreement, and shall be applied to the periodic installments stated in E above.  In the event the term of this Agreement does not commence for any reason whatsoever, the Advance Payments stated in D above shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement.  Payment of all periodic installments and other amounts payable hereunder shall be made to Creditor at its above stated address, or as it shall otherwise designate in writing.  **THIS AGREEMENT IS**

IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.

5.   OBLIGOR REPRESENTS THAT IT HAS SELECTED THE EQUIPMENT, AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY.   CREDITOR AND CREDITOR'S ASSIGNEE SHALL NOT BE LIABLE TO OBLIGOR OR ANY THIRD PARTY FOR ANY LOSS, DAMAGE, INJURY OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE EQUIPMENT OR THE USE OR MAINTENANCE THEREOF OR ANY DEFECT THEREIN, THE FAILURE OF OPERATION THEREOF, OR ANY REPAIR, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF OR BY ANY   INTERRUPTION OR SERVICE OR LOSS OF USE THEREOF OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED, INCLUDING (WITHOUT LIMITATION) ANY LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL CREDITOR BE LIABLE FOR ANY DAMAGES WHICH MAY BE ASSESSED AGAINST OBLIGOR IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES PATENT, TRADEMARK OR COPYRIGHT.   CREDITOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT FOR TAX OR ACCOUNTING PURPOSES, OR AS TO THE COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE   GOVERNMENT   REGULATIONS   OR   REQUIREMENTS,   WHICH   SHALL   BE   THE   SOLE RESPONSIBILITY OF THE ABOVE-NAMED SELLER AND/OR MANUFACTURER OF THE EQUIPMENT.   NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY SELLER SHALL BE BINDING ON CREDITOR NOR SHALL THE BREACH OF SUCH RELIEVE OBLIGOR OF, OR IN ANY WAY AFFECT, ANY OF OBLIGOR'S OBLIGATIONS TO CREDITOR OR CREDITOR'S ASSIGNEE AS SET FORTH HEREIN. Obligor agrees to look solely to the manufacturer, the Seller named above or the carrier of the Equipment (which are solely responsible for supplying Obligor with all literature and manuals respecting the Equipment) for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, installation or inability to use the Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitations) Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

6. Obligor shall accept the Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Equipment so delivered.  Unless Obligor gives Creditor and Seller written notice of each defect or other proper objection to any item of Equipment within five (5) days after delivery thereof, it shall be conclusively presumed that the Equipment was duly delivered and unconditionally accepted by Obligor.   If Obligor wrongfully refuses delivery of any item of Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Equipment.  Upon such payment, this Agreement shall terminate as to such item of Equipment only, and the periodic installment hereunder shall be proportionately adjusted.

7.  Obligor shall keep the Equipment within the United States at the above-stated "Location of Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Equipment therefrom for more than thirty (30) days without Creditor's prior written consent.

8.  Obligor shall use the Equipment in a careful manner and shall at all times, at its sole expense, keep the Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance.   Obligor shall not make any alterations, additions, or improvements to the Equipment which are not readily removable without causing damage to or reducing the value of the Equipment.  Obligor agrees to cause the Equipment to be maintained by the above-named Seller pursuant to Seller's standard preventive maintenance contract or by a comparable maintenance contract issued by a maintenance provider acceptable to Creditor.

9. Obligor agrees to title and register the Equipment with the appropriate Department of Motor Vehicles within 30 days of the date of this Agreement listing Creditor as first lienholder and having said title and/or proof of lien forwarded to Creditor. **FAILURE TO PROVIDE SATISFACTORY PROOF OF TITLE AND REGISTRATION SHALL CONSTITUTE AN EVENT**

2

INITIAL

OF DEFAULT AND MAY RESULT IN THE REPOSSESSION OF THE COLLATERAL BY CREDITOR AND THE IMPOSITION OF PENALTIES AND FEES AT A RATE OF $25.00 PER DAY. Creditor shall have the right during normal hours, upon reasonable prior notice to Obligor, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or to otherwise protect Creditor's interest.

10. The Equipment shall be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty. Obligor represents, warrants and covenants that, unless Obligor owns the premises in which the Equipment is to be located and such premises are not subject to any mortgage, Obligor shall provide Creditor, within ten (10) days following the execution by Obligor of this Agreement, with a waiver from each landlord and/or mortgagee of the premises in which the Equipment is to be located of any rights which such landlord and/or mortgagee may have in respect of any of the Equipment (including, but not limited to, claims against the Equipment by reason of accession or distraint, or that the Equipment constitutes a fixture affixed to real property) and to procure for Creditor, in form acceptable to Creditor, such documents with respect to such waiver as Creditor may reasonably request.

11. In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

12. Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under paragraph 4 hereof or any other obligation hereunder because of any such occurrence. In the event of damage to any item of the Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor, shall (a) replace the same with like equipment in good condition and repair, or (b) pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such item of Equipment. Upon Creditor's receipt of such payment, Creditor's security interest in such item of Equipment shall cease.

13. Obligor shall, at its expense, keep the Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the greater of (a) the total periodic installments hereunder, or (b) the full replacement cost of the Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Creditor. Each policy shall provide that, as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, may apply any proceeds of such insurance to replace or repair such Equipment and/or to Obligor's obligations hereunder. If Obligor shall fail to provide any such insurance or, within ten (10) days after Creditor's request therefore, shall fail to deliver the policies or certificates thereof to Creditor, then Creditor, at its option, shall have the right to procure such insurance and to add the full cost thereof to the payment next becoming due, which Obligor agrees to pay. The amount of such insurance shall be sufficient so that neither Creditor nor Obligor will be considered a co-insurer. Obligor also shall carry public liability insurance, both personal injury and property damage covering the Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that losses, if any, shall be payable to Creditor and Creditor's assignee as "loss payee", and all such liability insurance shall include Creditor and Creditor's assignee as an "additional insured." Obligor shall pay the premiums for such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Creditor, that it will give Creditor at least ten (10) days prior written notice of the effective date of any alternation or cancellation of such policy, and that Creditor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy.
Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to make claim for, receive payments of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. In any event, Obligor shall be liable for any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Equipment or the use or operation of the Equipment.

14. Obligor covenants and agrees at all times to keep the Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase, possession or use of the Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If any

3

of same shall remain unpaid when due, Creditor may pay same and add such payment to the payment next becoming due. Obligor shall execute and deliver to Creditor upon Creditor's request such further instruments, financing statements and documents containing such other assurances as Creditor deems necessary or advisable for the confirmation or perfection of Creditor's rights hereunder or to otherwise effectuate the intent of this Agreement.

Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to execute, apply, amend, file, or take any reasonably necessary action to confirm or perfect Creditor's security interest in the equipment.

15. Obligor shall and does hereby indemnify and save Creditor, its directors, officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage, repair, return or other disposition of the Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and, at Creditor' sole option, shall defend Creditor against any Indemnified Claim at Obligor's sole expense with counsel selected by Creditor. Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Equipment so as to incur any liability or obligation for or on behalf of Creditor.

16. OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT. ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID. Creditor may, without notice, transfer or assign this Agreement or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to this Agreement and/or the Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and Obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest in this Agreement and, upon such assignment, Obligor agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise. Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to Creditor. Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice. Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden or risk imposed on the Obligor under this Agreement. Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would be deemed to materially affect the Obligor's interest.

17. As used in this Agreement, the term "Event of Default" shall mean any one or more of the following: (an) the failure by Obligor to make any payment when due hereunder or the failure by a Debtor (as hereinafter defined) to pay when due any of the Liabilities (as hereinafter defined); (b) the failure by a Debtor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Debtor or otherwise relating to any of the Liabilities (collectively, the "Other Documents"), or (ii) any other obligation of a Debtor to Creditor; (c) any representation or warranty maded by or on behalf of any Debtor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made; (d) the making by a Debtor of any misrepresentation to Creditor or the failure on the part of a Debtor to disclose to Creditor any material fact in connection with this Agreement or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof; (e) the breach by a Debtor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor

4

hereunder; (f) any default in the payment of any indebtedness owed to any individual or entity other than Creditor, or any default in the performance or observance of the terms of any agreement, document or instrument pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default Is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof); (g) the failure of a Debtor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Equipment or any security for any of the Liabilities (including, without limitation, any premium on any insurance policy with respect to any of the Equipment or any security for any of the Liabilities, or any insurance policy assigned to Creditor as security for any of the Liabilities), or the making of any tax assessment against any Debtor by the United States or any state or local government; (h) the entry of a judgment against a Debtor or any attachment, levy or execution against any property of a Debtor, or the condemnation or seizure of any part of any property of a Debtor by any governmental authority or court at the insistence of such governmental authority; (i) the death of a Debtor, if an individual, or the death of any individual member of a Debtor, if a partnership or joint venture; (j) the change in control, management, ownership or operations of a Debtor, or the suspension of the usual business of a Debtor, or the dissolution, liquidation or other termination of existence of a Debtor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Debtor, or the sale of material assets of an Obligor; (k) the failure of a Debtor (or any admission in writing by a Debtor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Debtor; (l) the filing of an application for appointment of trustee, custodian or receiver for a Debtor or of any part of a Debtor's property, or an assignment for the benefit of creditors by a Debtor, or the making or sending of notice of any intended bulk transfer by a Debtor; (m) the filing of a petition in bankruptcy by or against a Debtor, or the commencement by or against a Debtor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or (n) such a change in the condition or affairs (financial or otherwise) of a Debtor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Equipment or any of the Liabilities or any security therefor. Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Entire Term (discounted to its present value at a discount rate of 6% as of the date of default) hereof shall be at once due and payable and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sell, lease, or otherwise dispose of the Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit, as Creditor many deem advisable, on at least ten (10) days' prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Equipment or any part thereof, crediting Obligor with the then reasonable rental value thereof for the balance of the Entire Term of this Agreement, and/or (iii) require Obligor to assemble all Equipment at Obligor's sole expense, for Creditor's benefit, at a place reasonably designated by Creditor: and/or (iv) pursue any other remedy granted by any existing or future document executed by Obligor or by law. Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of repossessing, storing, repairing and preparing Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted. The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and after payment of all expenses (which amount shall be retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Entire Term of the Agreement and any other amounts due hereunder, with Obligor to remain liable for any deficiency. Any amount due Creditor under this paragraph 17 shall be deemed liquidated damages for the breach hereof and not a penalty. All rights and remedies of Creditor shall be cumulative and not alternative and are in addition to any other remedies provided by law. Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on a future occasion.

For purposes of this Agreement, (a) the term "Debtor" shall mean Obligor and any guarantor, pledgor or hypothecator, and any other party liable for any of the Liabilities of Obligor in addition to Obligor and (b) the term "Liabilities" shall mean all liabilities and obligations of any kind of all Debtors (or any partnership, joint venture or other group of which any Debtor is a member) to Creditor whether (i) for the account of Creditor, or as agent for others, (ii) acquired directly or indirectly by Creditor from Obligor or otherwise, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortuous or now existing or hereinafter arising, or (iv) incurred by a Debtor as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses and attorneys' fees, incurred by Creditor in connection with any such liabilities or obligations or any security therefor.

5

18.  Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payment's due date, Obligor agrees to pay Creditor, on demand, as liquidated damages and not as a penalty; (a) with respect to payments, an administrative fee equal to five cents (\$.05) for each one dollar (\$1.00) of such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever, is less, from the date such payment is due until the date such payment is made in full to Creditor.  Such amount(s) shall be payable in addition to all amounts payable by Obligor as a result of exercise of any of the remedies herein provided.  Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement.

19.  Obligor agrees that this Agreement is irrevocable for the Entire Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment to operate properly, termination by operation of law or any other cause.  Obligor further agrees that it shall have no right to prepay its obligations hereunder, in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law.  Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Equipment from Seller.  Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request.  Obligor warrants (a) that this Agreement has been duly authorized, executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms, and (b) that no provision of this Agreement (i) is inconsistent with Obligor's charter, by-laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or (ii) conflicts with any applicable law, rule or regulation, and (c) that no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement.  Obligor shall not change its name or its address without providing Creditor with at least thirty (30) days prior written notice thereof.

20.  Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Equipment which may arise or become due during the term of this Agreement, whether or not specifically mentioned herein.  No periodic installment or other sums payable by Obligor pursuant to this Agreement shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Equipment or any item thereof, any limitation, restriction, deprivation or prevention of, or any interference with Obligor's use of the Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Obligor from the Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

21.  OBLIGOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH THIS AGREEMENT SHALL BE LITIGATED ONLY IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS OR SUCH OTHER FORUM AS CREDITOR SHALL ELECT.  Obligor consents to the jurisdiction and venue of the foregoing courts and consents that any process or notice of motion or other application to either of such courts or a judge thereof may be served inside or outside the state of Creditor's principal place of business by registered or certified mail, return receipt requested, directed to Obligor at its address set forth in this Agreement (and service so made shall be deemed complete five (5) days after the same has been posted as aforesaid) or by personal service, or in such other manner as may be permissible under the rules of such courts.  Obligor appoints each and every officer of Creditor as agent for the purpose of accepting service of any process within the state of Creditor's principal place of business, subject only to the condition that the officer promptly mail a copy of that process to Obligor at its address for notices hereunder.

22.  EACH OF THE PARTIES HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OBLIGOR AND CREDITOR RELATING TO THE SUBJECT

6

INITIAL

MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OBLIGOR AND CREDITOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

23.  Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other.  Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular.  If more than one Obligor is named herein the liability of each shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted.  Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof. Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-509 of the UCC or otherwise, to file financing statements covering the Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. IN THE EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

24.  THIS AGREEMENT SHALL BE CONSTRUED UNDER THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAW OR CHOICE OF LAW.  This Agreement shall not become effective until accepted by Creditor at its above-described office, and upon such acceptance shall, subject to paragraph 16 hereof, inure to and bind the parties, their successors, legal representatives and assigns. No provision hereof that may be construed as unenforceable shall in any way invalidate any other provision hereof, all of which shall remain in full force and effect.  All representations, warranties, indemnities and agreements of Obligor contained in this Agreement shall survive and continue in full force and effect notwithstanding termination or expiration of this Agreement.

No agent or employee of Seller is authorized to bind Creditor to this Agreement, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to Seller or any agent or employee of Seller.  **THE UNDERSIGNED AGREE TO ALL TERMS AND CONDITIONS SET FORTH ABOVE AND IN WITNESS THEREOF HEREBY EXECUTE THIS AGREEMENT.**

CREDITOR:  Advantage Funding Commercial Capital Corp.

By: _____

Accepted at its office listed above: _____
                                         Date

OBLIGOR:  MEDCORP, INC.

By: _____

Title: _____

7

INITIAL

## CERTIFICATE OF AUTHORITY FOR CHATTEL MORTGAGES

I certify to <u>Advantage Funding Commercial Capital Corp.</u> that the following resolutions were duly adopted by the Board of Directors of <u>MEDCORP, INC.</u> a Corporation existing under the laws of <u>Ohio</u> at a meeting duly held on _____ at which meeting a quorum was present and acting throughout, that the same have not been modified or rescinded and are not in conflict with any provision of the certificate of incorporation, by-laws or any agreement of said Corporation.

"RESOLVED, that the borrowing of this Corporation from _Advantage_____ Funding Commercial Capital Corp. ("Creditor") of funds to finance the purchase of certain equipment which has been or will be purchased by this Corporation and the granting of a security interest to Creditor in such equipment is hereby approved, and any officer of this Corporation is authorized, in the name and on behalf of this Corporation to execute and deliver to Creditor a Chattel Mortgage covering such equipment, containing such terms and provisions as may be approved by the officer executing the same, his execution thereof to be deemed conclusive evidence of such approval, and any officer of this Corporation is also authorized, in the name and on behalf of this Corporation, to execute and deliver such other documents and to take such other action as may be deemed necessary or advisable to effectuate and perform such Chattel Mortgage."

I further certify that listed below are the officers of said Corporation, the respective offices held by them and specimens of their genuine signatures:

| Name | Title | Specimen Signature |
|------|-------|--------------------|
| _____ | C O O | X _____ |
| _____ | Vice President | _____ |
| _____ | Treasurer | _____ |
| _____ | Secretary | _____ |

Signed and sealed this _27_ day of _march_ , _2009_
(CORPORATE SEAL)

X _____
CEO

If the Secretary executing this Certificate is a signatory on any of the documents referred to above, another officer must countersign below to verify the authority of the Secretary to execute said documents on behalf of this corporation.

X _____
Officer's Countersignature

CFO
_____
Title



Date of Chattel Mortgage: _____

Creditor:   Advantage Funding Commercial
Capital Corp.
1111 Marcus Avenue, Suite M27
Lake Success, NY 11042

## DELIVERY & ACCEPTANCE OF EQUIPMENT BY OBLIGOR

The undersigned Obligor acknowledges that the Equipment described in the Chattel Mortgage accepted by the above-named Creditor on the date indicated above has been received in good repair, has been properly installed, tested and inspected and is operating satisfactorily in all respects for all of Obligor's intended uses and purposes at the location(s) specified in the Chattel Mortgage.   OBLIGOR HEREBY ACCEPTS UNCONDITIONALLY AND IRREVOCABLY THE EQUIPMENT.

By signature below, Obligor specifically authorizes and requests Creditor and/or its Assignee to make payment to the seller of the Equipment.  Obligor agrees that said Equipment has not been delivered, installed or accepted on a trial basis.

WITH THE DELIVERY OF THIS DOCUMENT TO CREDITOR, OBLIGOR ACKNOWLEDGES AND AGREES THAT OBLIGOR'S OBLIGATIONS TO CREDITOR AND ITS ASSIGNEE BECOME ABSOLUTE AND IRREVOCABLE AND OBLIGOR SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT. OBLIGOR AFFIRMS THAT IT HAS NO DEFENSES OR COUNTERCLAIMS AGAINST CREDITOR AND IF THE CHATTEL MORTGAGE OR THE SCHEDULE IS ASSIGNED BY CREDITOR, OBLIGOR WILL NOT ASSERT AGAINST THE ASSIGNEE ANY DEFENSE, CLAIM, SETOFF OR COUNTERCLAIM WHICH OBLIGOR MAY HAVE AGAINST CREDITOR.

Date of Acceptance: _____

Obligor:   MEDCORP, INC.
(Full name of individual, partnership or corporation)

The undersigned warrants that he is a duly authorized corporate officer, partner or manager of the above-named Obligor.

By: _____
Name: _____
Title: _____

**IMPORTANT: THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED ALL OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH IT.**

# EXHIBIT E
# TO BROWN AFFIDAVIT



# Advantage Funding
### Transportation Financing & Leasing Specialists

DATE:                                      12/16/2013                                    4029-01070
ACCOUNT NAME:                    American Ambulette & Ambulance Services Inc
ACCOUNT SCHEDULE             BALANCE DUE SUMMARY

**A. PAST DUE MONTHLY RENTAL CHARGE BREAKDOWN:**

| | | | | | | |
|---|---|---|---|---|---|---|
| # Months past due: | | 1 | | Past Due From: | | 12/15/2013 |
| Next Payment Due Date: | | 12/15/2013 | | | | |
| | | Monthly Unit Cost | | No. Months | | Aggregate |
| 1) | Equipment Rental: | $545.00 | X | 1 | $ | 545.00 |
| 2) | Tax on Equipment: | | X | | $ | - |
| 3) | Late Charge on Equipment Rental: | $32.70 | X | 10 | $ | 327.00 |
| 4) | Late Charge on Property Tax: | | X | | | |
| | | PAST DUE AGGREGATE | | | $ | 872.00 |

**B. OTHER CHARGES PAST DUE:**

| | | | |
|---|---|---|---|
| 1) | Property Tax: | $ | - |
| 2) | Sales Tax on Property Tax: | | |
| 3) | Collection Charges (BOUNCE CHECK FEES) | $ | 191.25 |
| | TOTAL OTHER PAST DUE CHARGES | $ | 191.25 |

**C. REMAINING AMOUNTS DUE:**

Months Remaining after Past due                      5

| | | | |
|---|---|---|---|
| 1) | Remaining Payments Equipment Rental Charges: | $ | 2,725.00 |
| 2) | Remaining Payments Sales Tax: | | |
| 3) | Residual: | | |
| 4) | Guaranteed Purchase Option: | $ | - |
| 5) | Repossession (Closeout Fee): | $ | - |
| 6) | Commission Paid: | | |
| 7) | Legal Fees to Date: | $ | - |
| 8) | Transportation Fees: | $ | - |
| 9) | Repair Fees: | $ | - |
| 10) | Repossession Fees: | $ | - |
| 11) | Miscellaneous | | |
| | TOTAL REMAINING PAYMENTS/PETITION: | $ | - |
| | | $ | 2,725.00 |

**D. TOTAL TRANSACTION TERMS:**

| | | | |
|---|---|---|---|
| Months | | Plan End Date: | 4/15/2014 |

**E. EQUIPMENT:**

| | | | |
|---|---|---|---|
| 1. | Gross Equipment Sale Proceeds: | $ | - |
| 2. | Letter of credit cashed: | $ | - |
| | GRAND TOTAL DUE | | $3,788.25 |

GENERAL EQUIPMENT DESCRIPTION:

**2009 Ford E150**
**VIN: 1FTNE14W29DA50206**

**EXHIBIT F**
**TO BROWN AFFIDAVIT**



## ADVANTAGE FUNDING

### CROSS-COLLATERAL AND CROSS-DEFAULT AGREEMENT

TO:    MEDCORP, INC.
       745 MEDCORP DRIVE
       TOLEDO, OH 43608

To Whom It May Concern::

You have entered into or been assigned one or more real property mortgages, conditional sale contracts, lease agreements, chattel mortgages, security agreements, and/ or notes (herein designated " Accounts") covering real property, personal property, fixtures, equipment and/or inventory (herein designated "Collateral") and you and/or your assignor have made direct loans or leases to or otherwise extended credit to us evidenced by Accounts creating security interests in Collateral.

In order to induce you or to enter into the Accounts, in consideration of your so doing, and for other good and valuable consideration, the receipt of which we hereby acknowledge, we agree as follows:

All presently existing and hereafter acquired Collateral in which you have or shall have a security interest shall secure the payment and performance of all our liabilities and obligations to you of every kind and character, whether joint or several, direct or indirect, absolute or contingent, due or to become due, and whether under presently existing or hereafter created Accounts or agreements, or otherwise.

A default under any Account or agreement shall be deemed a default under all other Accounts and agreements. A default shall result if we fail to pay any sum when due pursuant to any Account or agreement, or if we or any Guarantor or other Obligor breach any of the other terms and conditions thereof, or if we or any Guarantor or other Obligor become insolvent, cease to do business as a going concern, make an assignment for the benefit of creditors, or if a petition for a receiver or in bankruptcy is filed by or against us, or if any of our or their property is seized, attached or levied upon. Upon any default any or all accounts and agreements, shall at your option, become immediately due and payable without notice or demand to us or any another party obligated thereon, and you shall have and may exercise any and all rights and remedies of a secured party under the Uniform Commercial Code as enacted in the applicable jurisdiction and as otherwise granted to you under any account or other agreement. We hereby waive, to the maximum extent permitted by law, notices of default, notices of repossession and sale or other disposition of Collateral, and all other notices, and in the event any such notice cannot be waived, we agree that if any such notice is mailed to us postage prepaid at the address shown below at least ten (10) days prior to the exercise by you or any of your rights or remedies, such notice shall be deemed to be reasonable and shall fully satisfy any requirement for giving notice.

All rights granted to you hereunder shall be cumulative and not alternative, shall be in addition to and shall in no manner impair or affect your rights and remedies under any existing Account, agreement, statute or rule of law.

We herewith expressly waive any rights we may have to termination of security interest or a satisfaction of mortgage on any paid in full Account so long as any Account covered by this agreement has not been satisfied in full.

This agreement may not be varied or altered nor its provisions waived except by your duly executed written agreement. This agreement is binding upon our heirs, administrators, executors, legal representatives, successors and assigns in favor of your successors and assigns.

MEDCORP, INC.
Obligor/Lessee

By:  _____

Its:  _____

Address: 745 medcorp dr., Toledo OH 43608